[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 16, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14712

_____

D. C. Docket No. 03-00182-CR-2-KOB-HGD

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

KENNETH K. LIVESAY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(November 16, 2009)

Before DUBINA, Chief Judge, BIRCH and SILER,[*] Circuit Judges.

DUBINA, Chief Judge:

---

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

# I.  BACKGROUND

A.  The Fraud Conspiracy:

The charges filed against Defendant-Appellee Kenneth Livesay ("Livesay") arose out of a massive accounting fraud conspiracy at HealthSouth Corporation ("HealthSouth"), headquartered in Birmingham, Alabama.  This massive fraud has been described in many of our previous decisions.  *See, e.g., United States v. Livesay*, 484 F.3d 1324, 1326 (11th Cir. 2007) ("*Livesay II*"); *United States v. Martin*, 455 F.3d 1227, 1230-31 (11th Cir. 2006); *United States v. McVay*, 447 F.3d 1348, 1349-50 (11th Cir. 2006) ("*McVay I*").  Suffice it to say that Livesay's participation in an illegal scheme to artificially inflate HealthSouth's earnings and to falsely report HealthSouth's financial condition is at the heart of the fraud.  Senior officials at HealthSouth issued instructions as to the desired earnings per share and Livesay and members of the accounting staff would meet to discuss ways to artificially inflate HealthSouth's earnings.  Once they decided upon the means of inflating earnings, Livesay instructed HealthSouth's accounting staff to manipulate various accounts to accomplish this purpose.  False and fraudulent entries were made to accounts in HealthSouth's books and records including, but not limited to (1) the property plant and equipment account; (2) the cash account; (3) the inventory account; and (4) the intangible asset (goodwill) accounts.

Livesay knew that there was no justification in fact or under generally accepted accounting principles for these entries. Additionally, Livesay participated in the preparation of HealthSouth's 1998 quarterly and annual reports filed with the Securities and Exchange Commission ("SEC"), including HealthSouth's 10-Ks. Livesay and others caused HealthSouth to file these reports publicly with the SEC, knowing that the reports materially misstated, among other things, HealthSouth's net income, revenue, earnings per share, assets, and liabilities. As a result of the scheme, HealthSouth's revenue and earnings were inflated by hundreds of millions of dollars in the publicly filed reports.

Finally, Livesay knowingly caused, directly and indirectly, to be transmitted by wire, from Birmingham, Alabama, to Washington, D.C., the 10-Qs and 10-Ks for HealthSouth in 1998, knowing that the financial results and financial condition related in those reports were materially false or that the reports omitted material information.

B. Procedural History:

Whoever said "third time's a charm" was apparently unfamiliar with the history of this case. On April 3, 2003, the government filed a three-count information in the Northern District of Alabama charging Livesay with conspiracy to commit wire fraud, securities fraud, and falsifying books and records; falsely

3

certifying financial information filed with the SEC; and a forfeiture count related to count one.

Livesay entered into a plea agreement with the government. Pursuant to the agreement, in exchange for waiver of his right to indictment and his plea of guilty to all three counts in the information, the government agreed to recommend that Livesay receive a three-level reduction to his offense level for his acceptance of responsibility and be sentenced at the low end of the Sentencing Guideline range as determined by the district court. In addition, the government agreed to file a motion for a downward departure pursuant to § 5K1.1 of the United States Sentencing Guidelines and 18 U.S.C. § 3553(e) (2006) if Livesay provided substantial assistance to the government in the investigation and/or prosecution of another person who had committed an offense related to the HealthSouth conspiracy.

On April 3, 2004, Livesay pled guilty to all three charges in the information before Judge U.W. Clemon. Livesay's first sentencing hearing occurred in June 2004. The pre-sentence investigation report ("PSI") determined that Livesay's offense level was 28 and his criminal history category I, which resulted in a Sentencing Guidelines imprisonment range of 78 to 97 months, a supervised release period of 2 to 3 years, and a fine range of $12,500 to $1 million. Pursuant

4

to the plea agreement, the government recommended a downward departure of approximately 3 levels and a sentence of 60 months imprisonment. The district court granted the government's motion for a downward departure, but departed well below the recommended departure to a level 10, which when combined with a criminal history category of I resulted in a sentencing imprisonment range of 6 to 12 months. Judge Clemon sentenced Livesay to 60 months probation. The government appealed and we reversed, holding that the district court failed to state the reasons supporting the extent of its departure, leaving this court to speculate regarding that reasoning. *See United States v. Livesay*, 146 F. App'x 403, 405 (11th Cir. 2005) (unpublished) ("*Livesay I*").

Livesay testified for four days at the trial of HealthSouth founder Richard Scrushy and two days at the related trial of another HealthSouth executive–Hannibal Sonny Crumpler. Scrushy was acquitted and Crumpler was convicted. During Livesay's second sentencing hearing, held in December 2005, the government informed the district court of Livesay's cooperation, renewed its motion pursuant to § 5K1.1, and recommended a sentence of 20 months in custody due to the additional cooperation. Judge Clemon imposed the same sentence of probation that he did at the first sentencing. Once again the government appealed and we reversed. *See Livesay II*, 484 F.3d at 1325-26. In *Livesay II*, we held that

5

both the extent of the district court's departure and the ultimate sentence imposed by the district court were unreasonable given Livesay's key role in the massive fraud. *Id.* at 1332-34. Livesay filed a petition for writ of certiorari. The Supreme Court granted the petition, vacated our decision, and remanded for reconsideration in light of *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586 (2007). *See Livesay v. United States*, 128 S. Ct. 872, 169 L. Ed. 2d 712 (2008).

After remand from the Supreme Court, we again vacated Livesay's sentence. *See United States v. Livesay*, 525 F.3d 1081 (11th Cir. 2008) ("*Livesay III*"). In *Livesay III*, we held that the district court committed procedural *Gall* error by basing the extent of its § 5K1.1 departure on an impermissible consideration: specifically, Livesay's repudiation of or withdrawal from the conspiracy. *Id.* at 1092. Once again, we remanded the case to the district court for resentencing. *Id.* at 1094. This time around, Judge Clemon recused himself and District Judge Karon O. Bowdre was assigned the case for resentencing. Judge Bowdre confirmed that the total offense level was 28, the criminal history category I, and the Sentencing Guidelines range was 78 to 97 months imprisonment. The district court again granted the government's § 5K1.1 motion and imposed a term of 5 years probation. For the third time, the government appealed the sentence.

## II. STANDARD OF REVIEW

We review a criminal sentence for procedural and substantive reasonableness under an abuse of discretion standard. *Gall*, 128 S. Ct. at 594.

## III. <u>DISCUSSION</u>

In *McVay II*, a case involving the sentence of one of Livesay's co-conspirators, this court held:

> The government's challenge in this case is limited to the reasonableness of the sentence the district court imposed. In light of the factors enumerated in 18 U.S.C. § 3553(a), including the seriousness of the offense, the need to promote respect for the law, and the need for just punishment, a non-custodial sentence for a key participant in a corporate fraud that exceeded a loss of a billion dollars and left victims too numerous to be counted is, argued by the government, unreasonable. We agree.
>
> After considering what the Supreme Court said in *Gall v. United States*, 128 S. Ct. 586 (2007), and after reviewing what the district court did on resentencing in this case, we conclude that the district court abused its discretion when it wholly failed to consider, among other things, the seriousness and full implications of McVay's criminal conduct.
>
> *A sentence of probation for a high-ranking officer in a corporation where over a billion dollars of fraud was perpetrated on an unsuspecting work force and investing public is not reasonable*, given the criteria found in § 3553(a) for determining an appropriate sentence. Probation does not account for the seriousness of McVay's conduct. It does not punish him sufficiently. It does not deter the defendant's future misconduct. It does not deter other similarly situated individuals from engaging in criminal conduct. It does nothing to encourage respect for the court system in this country. Post-*Gall*, a district court need not justify an extraordinary departure

7

with extraordinary reasons, but it must still provide a compelling
justification for the sentence it selects. In our view, that was not done
in this case.

*United States v. McVay*, 294 F. App'x 488, 489-90 (11th Cir. 2008) ("*McVay II*")

(emphasis added). The same can be said for the probationary sentence imposed in

this case. As in *McVay II*, we conclude that the sentence imposed by the district

court in this case is patently unreasonable in light of Livesay's role in this massive

corporate fraud.

Title 18, Section 3553(a)(2) of the United States Code provides that, in

determining the particular sentence to be imposed, the sentencing court shall

consider the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the
law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational
training, medical care, or other correctional treatment in the most
effective manner . . . .

18 U.S.C. § 3553(a)(2). In this case, these statutory factors strongly cut against the

reasonableness of the probationary sentence imposed. As to the first factor–the

need for the sentence to reflect the seriousness of the offense, to promote respect

for the law, and to provide just punishment for the offense–when imposed upon a

8

high-ranking corporate officer that helped bilk over a billion dollars from the company's innocent shareholders, a sentence devoid of any meaningful period of incarceration simply does not reflect these goals.

As to the next factor–the need for the sentence to afford adequate deterrence–it is difficult to imagine a would-be white-collar criminal being deterred from stealing millions of dollars from his company by the threat of a purely probationary sentence, regardless of how much probation that person received. As we noted in *Livesay III*, the legislative history of § 3553 reveals that Congress "viewed deterrence as 'particularly important in the area of white collar crime.'" 525 F.3d at 1093-94 (quoting *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)). In particular, in enacting § 3553, "Congress was especially concerned that prior to the Sentencing Guidelines, '[m]ajor white collar criminals often [were] sentenced to small fines and *little or no imprisonment*." *Martin*, 455 F.3d at 1240 (quoting S. Rep. No. 98-225, at 76 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3259) (emphasis added) (alteration in original). Based on this statutory purpose and legislative history, we concluded in *Martin* that a seven-day prison sentence imposed upon another high-level HealthSouth executive that took part in the same conspiracy as Livesay was utterly inadequate from a deterrence perspective. *Id.*

In *Martin*, we noted that "[b]ecause economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'" *Id.* (quoting Stephanos Bibas, *White-Collar Plea Bargaining and Sentencing After Booker*, 47 Wm. & Mary L. Rev. 721, 724 (2005)) (second alteration in original). We went on to reason that "[d]efendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with *serious* punishment." *Id.* (emphasis added). If a would-be white-collar criminal could steal millions of dollars, place the money in an off-shore bank account, serve his probationary sentence, and then be free to start a new life with his newly-acquired fortune, this court sees little incentive for that person to think twice before concocting such a scheme. As we stated in *Martin*, the message of such a sentence "is that would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty." *Id.* As the threat of a seven-day prison sentence was not adequate to deter the criminal conduct at issue in *Martin*, even more so the threat of spending time on probation simply does not, and cannot, provide the same level of deterrence as can the threat of incarceration in a federal penitentiary for a meaningful period of time.

Accordingly, because the sentence imposed in this case is not reasonable in

light of the sentencing factors outlined in § 3553(a), we once again vacate the sentence and remand this case to the district court for resentencing. Not only do we hold that the particular sentence imposed below is unreasonable, but we also hold that *any* sentence of probation would be unreasonable given the magnitude and seriousness of Livesay's criminal conduct. As we stated in *Martin*, only the imposition of a meaningful period of incarceration will meet the goals that Congress laid out in the sentencing statute.

VACATED and REMANDED.