[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12719
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 8, 2011
JOHN LEY
CLERK

D.C. Docket No. 4:09-cr-10010-JEM-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ADELIO TORRES-COBAS,

Defendant-Appellant.

_____

No. 10-13526
Non-Argument Calendar
_____

D.C. Docket No. 4:09-cr-10010-JEM-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PEDRO LUIS HERNANDEZ-SANCHEZ,

Defendant-Appellant.
_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(April 8, 2011)

Before HULL, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Adelio Torres Cobas and Pedro Luis Hernandez-Sanchez appeal their

convictions and sentences for one count of conspiracy to encourage and induce

aliens to enter the United States illegally, 8 U.S.C. § 1324(a)(1)(A)(v)(I), and three

counts of bringing aliens to a place other than a designated port of entry, 8 U.S.C.

§ 1324(a)(2)(B)(iii). On appeal, Torres Cobas and Hernandez-Sanchez argue that

the district court plainly erred by accepting their guilty pleas for violating

§ 1324(a)(2)(B)(iii) because their pleas were not supported by a sufficient factual

basis.[1] Specifically, they contend that the government failed to establish that they

knew that the Cuban aliens that they smuggled did not have prior authorization to

reside in the United States. They explain that the federal government's "wet-foot,

_____

[1] Hernandez-Sanchez and Torres Cobas do not challenge their conspiracy convictions
under 8 U.S.C. § 1324(a)(1)(A)(v)(I).

dry-foot" policy permits Cuban aliens who reach the United States to reside here. In light of that policy, they assert, they did not have fair notice that the smuggled aliens could not reside in the United States. Torres Cobas and Hernandez-Sanchez also argue that their five-year mandatory minimum sentences under § 1324(a)(2) are unconstitutional. For the reasons stated below, we affirm.

I.

A grand jury returned a superseding indictment charging Hernandez-Sanchez and Torres Cobas with: (1) 1 count of conspiracy to induce aliens to enter the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Count 1); (2) 25 counts of knowingly encouraging an inducing an alien to illegally enter the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and 18 U.S.C. § 2 (Counts 2 through 26); and (3) 24 counts of bringing aliens to a place other than a designated port of entry, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii) and 18 U.S.C. § 2 (Counts 27 through 50). Hernandez-Sanchez and Torres Cobas agreed to plead guilty to Count 1 and Counts 27 through 29.

At the change-of-plea hearing, the government asserted that it would be able to prove the following facts if the case were to proceed to trial. In late August 2008, Torres Cobas and Hernandez-Sanchez approached Seidel Guzman about a

potential alien smuggling trip to Cuba to pick up certain members of their family. Guzman agreed, and eventually Yamil Moreno and Osvaldo Rodriguez also joined in the planning of the trip. On the evening of September 13, 2008, the conspirators went to Dinner Key Marina in Miami to launch a 32-foot Concept vessel owned by Rodriguez. Guzman used the Concept vessel to travel to Cuba while the other defendants waited in Florida. On September 14, Guzman arrived in Cuba and picked up 25 migrants, including several family members of Torres Cobas and Hernandez-Sanchez. The following day, Guzman landed the migrants at mile marker 88 in the Florida Keys.

As Guzman was returning to Miami, he ran out of gasoline. Hernandez-Sanchez, Torres Cobas, and Moreno proceeded to Guzman's location in a back-up vessel and refueled the Concept vessel. Guzman got into the backup vessel, and Hernandez-Sanchez and Torres Cobas boarded the Concept vessel and piloted it back to Miami. All of the conspirators were apprehended by the Coast Guard upon their arrival in Miami. According to the government, none of the smuggled migrants had permission to come to, enter, or reside in the United States.

Torres Cobas and Hernandez-Sanchez acknowledged that the government would be able to establish all of those facts in a trial. The district court concluded

4

that Torres Cobas and Hernandez-Sanchez were pleading guilty knowingly and voluntarily, and that their pleas were supported by a sufficient factual basis. Therefore, the court accepted the defendants' pleas.

Hernandez-Sanchez's presentence investigation report (PSI) determined that he had a base offense level of 12 under U.S.S.G. § 2L1.1(a)(3). The PSI increased Hernandez-Sanchez's offense level by 6 under § 2L1.1(b)(2)(B) because the offense involved the smuggling or transporting of 25 unlawful aliens. The PSI also imposed a two-level enhancement under § 2L1.1(b)(6) because Hernandez-Sanchez had intentionally or recklessly created a substantial risk of death or serious bodily injury to another person. Hernandez-Sanchez received a three-level reduction for acceptance of responsibility. These calculations produced a total offense level of 17, which, when combined with Hernandez-Sanchez's criminal history category of I, resulted in a guideline range of 24 to 30 months' imprisonment. Because Hernandez-Sanchez faced a mandatory minimum sentence of 5 years' imprisonment with respect to Count 29, his guideline sentence became 60 months. Torres Cobas's sentencing calculations were identical to those of Hernandez-Sanchez.

Hernandez-Sanchez filed a series of objections to the PSI. First, he argued that he should not have received a 6-level enhancement for smuggling 25 aliens

because he only sought to bring his wife and child to the United States. Hernandez-Sanchez further argued that he should have been given a three-level reduction under U.S.S.G. § 2L1.1(b)(1) because he participated in the conspiracy "other than for profit." He asserted that imposing a five-year sentence in his case would produce an unwarranted sentencing disparity, in violation of 18 U.S.C. § 3553.

Hernandez-Sanchez also raised a series of constitutional challenges to the five-year mandatory minimum sentence in § 1324(a)(2). First, he argued that the penalty provisions of the statute were unconstitutionally vague or ambiguous. Second, he contended that imposing a five-year sentence in his case would result in cruel and unusual punishment, in violation of the Eighth Amendment. Third, Hernandez-Sanchez asserted that a 60-month sentence would violate his right to substantive due process because he was a first-time offender and the mandatory minimum was much greater than the sentence called for by the Guidelines. Finally, he argued that the sentencing scheme under § 1324(a)(2) violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) because it created an enhanced penalty based on the number of counts charged, rather than the elements of the offense. Torres Cobas offered the same objections to his PSI.

At the defendants' respective sentencing hearings, the district court overruled all of their objections. The district court sentenced Torres Cobas to concurrent terms of 60 months' imprisonment with respect to all 4 counts. The district court sentenced Hernandez-Sanchez to 24 months' imprisonment with respect to Counts 1, 27, and 28, and 60 months' imprisonment with respect to Count 29, with all 4 sentences to run concurrently.

## II.

Torres Cobas and Hernandez-Sanchez did not move to withdraw their guilty pleas for Counts 27, 28, and 29 before the district court, nor did they argue that their pleas to those counts were not supported by a sufficient factual basis. Therefore, we are reviewing for plain error. *See United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (noting that, when a defendant fails to object to a Fed.R.Crim.P. 11 violation, this Court reviews for plain error). Under the plain-error standard, the defendant must show: "(1) error, (2) that is plain, and (3) that affects substantial rights." *Id.* If the defendant is able to establish all three elements, we then have discretion to correct an error that "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993) (quotation omitted) (alteration in original). An error is "plain" for purposes of

7

plain-error review if it is "'clear under current law.'" *United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005) (quoting *Olano*, 507 U.S. at 734, 113 S.Ct. at 1777). If neither this Court nor the Supreme Court has ruled on an issue, and the statutory language does not clearly resolve the question, there cannot be plain error with respect to that issue. *Id.*

In relevant part, 8 U.S.C. § 1324(a)(2) provides:

> Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such alien shall, for each alien [smuggled] . . . be fined under Title 18 and shall be imprisoned, in the case of a first or second violation . . . not more than 10 years . . . and for any other violation, not less than 5 nor more than 15 years.

In this case, Hernandez-Sanchez and Torres Cobas cannot establish that the district court plainly erred by accepting their pleas to Counts 27, 28, and 29. Neither this Court nor the Supreme Court has considered the relationship between the wet-foot, dry-foot policy and 8 U.S.C. § 1324(a)(2), and both sides offer facially plausible interpretations of the statute. Therefore, the district court did not commit plain error in finding that the smuggled aliens in this case did not have permission to remain in the United States. *See Chau*, 426 F.3d at 1322.

8

In addition, on this record, the district court did not commit plain error by finding that the defendants acted with the necessary scienter. At the change-of-plea hearing, both defendants agreed that the government could prove that the Cuban aliens did not have official authorization to reside in the United States. This admission contradicts the defendants' assertion that they were confused by the wet-foot, dry-foot policy and were not aware that the aliens did not have permission to reside in the United States. Given the defendants' acknowledgment of their guilt, any error that the district court made in finding that they acted with the necessary scienter was not plain. Accordingly, Hernandez-Sanchez and Torres Cobas have not established that the district court plainly erred by accepting their guilty pleas on Counts 27, 28, and 29.

## III.

We review constitutional issues concerning sentencing *de novo*. *United States v. Steed*, 548 F.3d 961, 978 (11th Cir. 2008). We review a sentence imposed by a district court for reasonableness, using an abuse-of-discretion standard. *United States v. Livesay*, 587 F.3d 1274, 1278 (11th Cir. 2009). We review a district court's factual findings at sentencing for clear error, and its application of the Sentencing Guidelines to those facts *de novo*. *United States v. Caraballo*, 595 F.3d 1214, 1230 (11th Cir. 2010).

9

In this case, Torres Cobas and Hernandez-Sanchez raise a number of separate arguments with respect to their sentences. In *United States v. Ortega-Torres*, 174 F.3d 1199, 1201-02 (11th Cir. 1999), we rejected the defendants' first argument, that the penalty provisions of 8 U.S.C. § 1324(a)(2) is unconstitutionally vague. The defendants' second contention, that their five-year sentences constitute cruel and unusual punishment under the Eighth Amendment, is foreclosed by our decision in *United States v. Raad*, 406 F.3d 1322 (11th Cir. 2005). In *Raad*, we held that a five-year mandatory minimum sentence under § 1324(a)(2) was not disproportionate to a defendant's convictions for smuggling three aliens. *Id.* at 1324.

We also reject the defendants' third argument, that their mandatory minimum sentences deprive them of substantive due process. Congress could reasonably have decided to impose an enhanced penalty on defendants who smuggle three or more aliens because such an enhanced penalty will deter individuals from attempting to smuggle large groups of aliens. Thus, § 1324(a)(2) does not violate substantive due process. *See United States v. Osburn*, 955 F.2d 1500, 1505 (11th Cir. 1992) (explaining that a statute that does not discriminate against a suspect class does not violate substantive due process unless Congress had no reasonable basis for enacting it).

10

Torres Cobas and Hernandez-Sanchez also contend that their enhanced mandatory minimum sentences are contrary to the Supreme Court's decision in *Apprendi*. In *Apprendi*, the Supreme Court interpreted the jury-trial requirement of the Sixth Amendment to mean that any fact, other than a prior conviction, used to enhance a defendant's sentence beyond a prescribed statutory maximum penalty must be found by a jury beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362-63. The statutory maximum for purposes of *Apprendi* is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004) (emphasis omitted).

No *Apprendi* violation occurred in this case. Torres Cobas and Hernandez-Sanchez admitted to smuggling three aliens when they pled guilty to Counts 27, 28, and 29. Thus, their enhanced mandatory minimum sentence was based on their own admissions, not on factual findings made by the district court. *See Blakely*, 542 U.S. at 303, 124 S.Ct. at 2537.

Torres Cobas's and Hernandez-Sanchez's remaining sentencing arguments are also meritless. They cannot challenge the reasonableness of their sentences because the district court sentenced them to the minimum term required by statute. *See United States v. Castaing-Sosa,* 530 F.3d 1358, 1362 (11th Cir. 2008)

11

(holding that a district court must sentence a defendant in accordance with any applicable statutory minimum sentence, even after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)). Moreover, neither defendant was entitled to a guideline reduction under U.S.S.G. § 2L1.1(b)(1). That section provides for a three-level reduction if "the offense was committed other than for profit," or if it involved the smuggling "only of the defendant's spouse or child." U.S.S.G. § 2L1.1(b)(1). In this case, the overall conspiracy was committed for profit, even if Torres Cobas and Hernandez-Sanchez personally did not receive any financial compensation for their involvement. In addition, the smuggling venture involved a total of 25 aliens, most of whom were not the spouse or child of either defendant. Thus, the district court properly concluded that § 2L1.1(b)(1) did not apply.

Accordingly, after review of the record and consideration of the parties' briefs, we affirm.

**AFFIRMED.**