[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11820
Non-Argument Calendar
_____

D.C. Docket No. 2:01-cr-00514-JHH-RRA-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LEE THORNTON SMITH, JR.,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 17, 2012)

Before MARTIN, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Lee Thornton Smith, Jr., proceeding pro se, appeals the district court's denial of his 18 U.S.C. § 3582(c)(2) motion for a sentence reduction.

I.

In January 2002, Smith pleaded guilty to three counts of distribution of crack cocaine and one count of possession with intent to distribute crack cocaine. His guideline range, based on an offense level of 31 and a criminal history category of VI, was 188 months to 235 months imprisonment. At sentencing, in April 2002, the district court granted the government's U.S.S.G. § 5K1.1 motion for a downward departure based on substantial assistance and imposed a sentence of 151 months imprisonment.

In February 2008, Smith filed a § 3582(c)(2) motion for a sentence reduction based on Amendment 706 to the guidelines. The district court found that Smith's amended guideline range was 151 months to 188 months imprisonment, and that a comparable departure based on substantial assistance would yield a range of 130 months to 162 months imprisonment. Exercising its discretion, the district court granted Smith's motion and reduced his sentence to 130 months imprisonment.

In November 2011, Smith filed a § 3582(c)(2) motion for sentence reduction based on Amendment 750 to the guidelines. The district court denied

2

that motion.  The court found that Smith's amended guideline range was 120 months to 137 months imprisonment, and that he was thus eligible for a reduction. But the court declined to grant relief "because [Smith] received a reduction previously and a further reduction does not appear appropriate, in light of his extensive criminal history" and a disciplinary infraction in January 2009.

Smith later filed three other § 3582(c)(2) motions for a sentence reduction, all based on Amendment 750.  In March 2012, the district court denied those motions.  The district court observed that it had rejected Smith's first request for a sentence reduction based on Amendment 750 because he "received a reduction previously and . . . a further reduction did not appear appropriate."  The court stated that Smith's latest filings gave no reason for it to revisit its prior decision.

On appeal, Smith asks us to set aside this ruling.  Specifically, he asserts that the district court erred in relying on (1) the fact that he previously received a sentence reduction; (2) his criminal history; and (3) his disciplinary infraction to deny his request for a sentence reduction.  He also argues that, in calculating his amended guideline range, the district court failed to take into account the downward departure he had previously received for providing substantial assistance to the government.

II.

3

In general, a term of imprisonment, once imposed, is not subject to modification.  See 18 U.S.C. § 3582(c).  Congress has provided, however, that a district court may reduce a defendant's sentence if it was based on a guideline range that was subsequently lowered by an amendment to the guidelines.  Id. § 3582(c)(2).  Any reduction of this kind must be consistent with the policy statement issued by the Sentencing Commission regarding this type of relief, U.S.S.G. § 1B1.10 (2011).  18 U.S.C. § 3582(c)(2).

When a district court rules on a motion for sentence reduction, it undertakes a two-step inquiry.  See Dillon v. United States, ___ U.S. ___, ___, 130 S. Ct. 2683,  2691 (2010).  First, the court determines the guideline range that would have applied to the defendant had the amendment been in effect at the time of the defendant's sentencing.  See id.  Second, if the amendment has the effect of lowering the defendant's guideline range, then the court decides whether to exercise its discretion to reduce the defendant's sentence.  See id. at 2691–92.

Several factors are relevant at the second step of the analysis.  First, a district court must consider the factors listed in 18 U.S.C. § 3553(a).  See 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10 cmt. n.1(B)(i).  Second, the court must also consider "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of

4

imprisonment." U.S.S.G. § 1B1.10 cmt. n.1(B)(ii).  Finally, the court may choose

to take into account the defendant's post-sentencing conduct.  Id. § 1B1.10 cmt.

n.1(B)(iii).

On appeal, we review the district court's ruling for abuse of discretion.

United States v. Webb, 565 F.3d 789, 792 (11th Cir. 2009).  A district court

abuses its discretion if it makes an error of law.  United States v. Tobin, 676 F.3d

1264, 1272–73 (11th Cir. 2012).  A district court also abuses its discretion if it

"(1) fails to afford consideration to relevant factors that were due significant

weight, (2) gives significant weight to an improper or irrelevant factor, or (3)

commits a clear error of judgment in considering the proper factors."  United

States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation marks

omitted).

### III.

Three of Smith's arguments do not require significant discussion.  First,

Smith states that the district court erred in calculating his amended guideline range

by not taking into account the § 5K1.1 departure he had received.  But, as the

Sentencing Commission has clarified, the guideline range that a district court must

calculate, in order to determine the eligibility of a defendant for a sentence

reduction, is "the guideline range that corresponds to the offense level and

5

criminal history category . . . determined before consideration of any departure provision in the Guidelines Manual." U.S.S.G. § 1B1.10 cmt. n.1(A) (emphasis added).

Second, Smith suggests that the district court erred by considering his criminal history. However, one of the § 3553(a) factors that a district court must consider is "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1). See U.S.S.G. § 1B1.10 cmt. n.1(B)(i). Third, Smith asserts that his January 2009 disciplinary infraction is also not relevant. But the Sentencing Commission has expressly indicated that a district court may take into account a defendant's post-sentencing conduct in determining whether a sentence reduction is warranted. Id. § 1B1.10 cmt. n.1(B)(iii).[1]

## IV.

Smith's remaining argument—that the district court erred in relying on the fact that he had received a sentence reduction under Amendment 706—requires more attention. As set out above, one reason that the district court gave in denying Smith's motion for a sentence reduction under Amendment 750 was the fact that

---

[1] Smith argues for the first time in his reply brief that the district court failed to provide notice of its intent to rely on his disciplinary infraction to rule on his request for a sentence reduction, in violation of our holding in United States v. Jules, 595 F.3d 1239, 1245 (11th Cir. 2010). Under our precedent, issues not raised in an appellant's initial brief are deemed abandoned. See United States v. Britt, 437 F.3d 1103, 1104–05 (11th Cir. 2006).

"he received a reduction previously" under Amendment 706. This observation apparently reflects the view that Amendment 706 adequately addressed the problems associated with the "infamous" crack-to-powder ratio of 100-to-1, United States v. Hunt, 459 F.3d 1180, 1182 (11th Cir. 2006), thus rendering a reduction under Amendment 750 unnecessary or inappropriate.

Needless to say, this is not the view of the Sentencing Commission. See U.S.S.G. App. C vol. III at 231 (2011) (stating that Amendment 706 is "neither a permanent nor a complete solution" to problems generated by the crack-to-powder ratio of 100-to-1, but instead an "interim" one); U.S. Sentencing Comm'n, Report to the Congress: Cocaine and Federal Sentencing Policy 10 (2007) (describing Amendment 706 as "only . . . a partial remedy"); see also Kimbrough v. United States, 552 U.S. 85, 100, 128 S. Ct. 558, 569 (2007) (noting that Amendment 706 was a "modest amendment" that provided "an ameliorating change").

Nor is it, in fact, the view of Congress. Indeed, while Amendment 706 lowered the crack-to-powder ratio to a range between 25-to-1 and 80-to-1, see Kimbrough, 552 U.S. at 106, 128 S. Ct. at 573, Congress went further when it enacted the Fair Sentencing Act of 2010 (FSA), Pub. L. No. 111-220, 124 Stat. 2372 (2010). That legislation lowered the crack-to-powder ratio to 18-to-1 and directed the Sentencing Commission to amend the guidelines in order to "achieve

7

consistency" with that ratio.  See Dorsey v. United States, ___ U.S. ___, ___, 132

S. Ct. 2321, 2329 (2012) (quotation marks omitted).

As Smith suggests, it is clear from this that Congress thought "Amendment

706 did not go far enough."  The FSA unambiguously reflects Congress's

judgment that the crack-to-powder ratios under Amendment 706 continued to

overstate the seriousness of crack cocaine offenses; continued to detract from the

sentencing goal of punishing major drug traffickers more seriously than low-level

dealers; and continued to undermine public confidence in the criminal justice

system in light of racial disparities.  See Dorsey, 132 S. Ct. at 2328–29; see also

Kimbrough, 552 U.S. at 97–98, 128 S. Ct. at 568.

Amendment 750 embodies this very congressional judgment: it is the

amendment to the guidelines that the Sentencing Commission specifically adopted

at the behest of Congress in order to implement the FSA.  See U.S.S.G. App. C

vol. III at 392–94 (noting that Amendment 750 was made pursuant to Congress's

directive).[2]  Thus, by suggesting that a reduction under Amendment 706 renders a

reduction under Amendment 750 unnecessary or otherwise inappropriate, the

---

[2] Amendment 750 is thus unlike many amendments to the guidelines, which are adopted at the initiative of the Sentencing Commission.  See generally Rita v. United States, 551 U.S. 338, 350, 127 S. Ct. 2456, 2464 (2007) (describing the revision of the guidelines).

8

district court took a position that is strikingly in tension with the policy judgment

of the Sentencing Commission and, more importantly, of Congress itself.[3]

We have often recognized, in the context of sentencing,[4] that district courts

enjoy broad discretion in weighing the § 3553(a) factors, see, e.g., United States v.

Pugh, 515 F.3d 1179, 1203 (11th Cir. 2008) (noting that district courts have "great

discretion in determining how to weigh those factors"), including the weight to be

given to the policy judgment of the Sentencing Commission itself, see 18 U.S.C. §

3553(a)(4), (5); see also Hunt, 459 F.3d at 1184 (declining to establish an "across-

the-board prescription regarding the appropriate deference to give [to] the

---

[3] One might say that the district court did not disagree with the policy behind Amendment 750, but rather the Sentencing Commission's decision to make that amendment retroactively applicable. See generally U.S.S.G. App. C vol. III at 418–19 (describing the reasons for Amendment 759, which made Amendment 750 retroactively applicable). We reject that characterization. The Sentencing Commission focuses on three factors in determining whether an amendment should apply retroactively: 1) the purpose of the amendment, 2) the magnitude of the change made by the amendment, and 3) the difficulty of applying the amendment retroactively. See U.S.S.G. § 1B1.10 bckgrd. note. The district court here did not quarrel with the Sentencing Commission's conclusion that the change engendered by Amendment 750 was significant or that it would be manageable to apply Amendment 750 retroactively. See U.S.S.G. App. C vol. III at 419. Thus, if the district court did take issue with the retroactivity of Amendment 750, it was, at bottom, a disagreement with the policy concerns behind the FSA and, by extension, Amendment 750 itself. See id. at 418.

[4] As the Supreme Court has observed, a § 3582(c)(2) proceeding is not "a sentencing or resentencing proceeding." Dillon, 130 S. Ct. at 2690; see also id. at 2691 (noting that Congress did not authorize "a plenary resentencing proceeding"). For this reason, our precedent on sentencing does not completely fit here. Still, a district court that rules upon a § 3582(c)(2) motion must consider the § 3553(a) factors, just as it does during a sentencing proceeding. See 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10 cmt. n.1(B)(i). Our precedent governing the weighing of those factors in the sentencing context is therefore instructive here.

9

Guidelines"). And rarely do we find that a district court has committed a clear error of judgment in making this determination. See Irey, 612 F.3d at 1190–91.

But we have done so in a few cases. For instance, in United States v. Jayyousi, 657 F.3d 1085 (11th Cir. 2011), we held that the district court made "a clear error of judgment about the sentencing of [the] career offender." Id. at 1117. We observed that "Congress ha[d] expressed a desire that career offenders receive sentences 'of imprisonment at or near the maximum term authorized,'" id. (quoting 28 U.S.C. § 994(h)), and that the defendant's "Guidelines sentence reflected this policy," id. By imposing a sentence below the guidelines range, the district court erroneously "deviated from this policy." Id.

Similarly, in Pugh, we vacated a below-guidelines sentence in part because it was not consistent with two policy judgments Congress had made. 515 F.3d at 1182, 1194–1203. First, we noted that the "detailed legislative findings and numerous legislative enactments" made by Congress in the area of child pornography clearly demonstrated its recognition of "the terrible harm child pornography inflicts on its victims." See id. at 1197–98 & n.12. In view of this, we held that the below-guidelines sentence had to be vacated because it did not hew to this congressional recognition and thus failed to give adequate weight to the seriousness of the offense. See id. at 1198–99.

10

Second, we found error in the district court's decision not to impose a term of supervised release. See id. at 1199–1202. We noted that, because of "the high rate of recidivism," both "Congress and the Sentencing Commission intended to impose life terms of supervised release on sex offenders." Id. at 1199 (quotation marks omitted). By not imposing any term of supervised release, we indicated, the district court failed to "give any real weight" to the views of the Sentencing Commission, see id. at 1200, and unreasonably discounted Congress's concern about protecting the public from further crimes of the defendant, see id. at 1201.

We came to similar conclusions in our en banc decision in Irey, where we also set aside a sentence as unreasonable. 612 F.3d at 1166. Noting Congress's concern about the risk of recidivism for sex offenders, we held that the district court "made a clear error of judgment" in concluding that a sentence below the guidelines would be sufficient to protect the public. See id. at 1166, 1214, 1217. Along these lines, we also concluded that the district court "made a clear error of judgment in downplaying the importance of deterring" child sex abuse. Id. at 1212. We acknowledged "[t]he sentencing judge's skepticism about deterring

11

these types of crimes," but we emphasized that neither Congress nor the Sentencing Commission shared that sentiment. Id. at 1210.[5]

It is true that, following the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), district courts may disagree with the policy judgments of the Sentencing Commission. See Irey, 612 F.3d at 1217. But, as our precedent also shows, there is significantly less room for a district court to disagree with a policy judgment that is shared by the Commission and by Congress. At the very least, a district court must articulate "sufficiently compelling reasons to justify" its decision to do so. Id. at 1211, 1212 n.32 (quotation marks omitted).

Here, the district court took a position that is contrary to that of the Sentencing Commission and of Congress when it indicated that a reduction under Amendment 706 renders a reduction under Amendment 750 unnecessary or otherwise inappropriate. Both the Sentencing Commission and Congress clearly

---

[5] Deviations from the policy judgment of Congress also led to our decisions to vacate the sentences imposed in United States v. Martin, 455 F.3d 1227, 1240–42 (11th Cir. 2006) (noting that the below-guidelines sentence was inconsistent with Congress's special concern about deterrence in the area of white-collar crimes), United States v. Livesay, 587 F.3d 1274, 1279 (11th Cir. 2009) (same), and United States v. Crisp, 454 F.3d 1285, 1290 (11th Cir. 2006) (vacating a sentence of five hours imprisonment as an attempt to "evade" the requirement imposed by Congress that a defendant convicted of the offense that was at issue be sentenced to a term of imprisonment). Cf. United States v. Mateos, 623 F.3d 1350, 1368–69 (11th Cir. 2010) (upholding an upward variance in light of a later-enacted measure by Congress to amend the guidelines to punish the offense more severely).

12

thought that Amendment 706 did not go far enough in addressing the disparity between crack cocaine and powder cocaine, and that the treatment of crack cocaine under that measure continued to have the effect of undermining the goals of federal sentencing.  The district court gave no explanation as to why it disagreed with this.  In light of our precedent, such a deviation is a clear error of judgment.  See, e.g., Jayyousi, 657 F.3d at 1117.

Unsurprisingly, the government does not attempt to defend the district court's position on this issue.  The government instead notes that "the [district] court mentioned the fact of the previous reduction [only] as one of several facts weighing against a further reduction."  The government thus urges us to view the error as harmless.  On this record, however, we cannot do so.  Indeed, the district court did not indicate that it would have denied Smith's motion for a sentence reduction based only on the remaining factors that it considered.  Cf. United States v. Keene, 470 F.3d 1347, 1348–49 (11th Cir. 2006) (affirming a sentence in part because the district court indicated that it would have imposed the sentence, even if it were wrong about an issue in calculating the guideline range).[6]

---

[6] The government observes that Smith's sentence of 130 months imprisonment falls within the amended guideline range—under Amendment 750 and prior to any departure—of 120 months to 137 months imprisonment.  This observation misses the point, however.  As the government itself acknowledges, the Sentencing Commission has provided that, in the case of a defendant whose original term of imprisonment was below his original guideline range because of his substantial assistance to the government, a district court may grant "a reduction

V.

For the reasons set out above, we vacate the district court's order denying Smith's motion for a sentence reduction and remand for further proceedings consistent with this opinion.  We express no views as to whether, upon reconsideration of the relevant factors, the district court should or should not grant the motion.

**VACATED AND REMANDED.**

---

comparably less than the amended guideline range." U.S.S.G. § 1B1.10(b)(2)(B).  This rule reflects the recognition—shared by the Sentencing Commission and Congress—that "defendants who provide substantial assistance are differently situated than other defendants and should be considered for a sentence below a guideline or statutory minimum even when defendants who are otherwise similar (but did not provide substantial assistance) are subject to a guideline or statutory minimum." U.S.S.G. App. C vol. III at 420.  The government concedes that Smith is eligible for a comparable reduction, and it does not dispute Smith's calculation that his amended guideline range—if the downward departure for substantial assistance were taken into account—would be 92 months to 115 months imprisonment.