[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-14014

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRITZBERT JEAN, JR.,
a.k.a. Jean Fritzbert Jr.,
a.k.a. Jean Fritzbert,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:20-cr-20230-JLK-2

———————————

Before ROSENBAUM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Fritzbert Jean, Jr. appeals his sentence of 96 months' imprisonment for possession of a firearm and ammunition by a convicted felon, which was within the Guidelines range of 84 to 105 months' imprisonment. Jean argues that his sentence was substantively unreasonable because his personal characteristics supported a sentence below the Guidelines range and should have been considered equally with the nature and circumstances of his offense. We agree with the decision of the court below and accordingly affirm.

I.

On February 10, 2020, law enforcement officers patrolling the Overtown neighborhood in Miami heard gunshots; as they drove over to investigate, the officers saw a silver Pontiac Grand Prix driving at a high speed in the opposite direction. Jean, who had previously been convicted of multiple felonies, was driving the Grand Prix and led the officers on a high-speed chase that lasted roughly seven minutes and ended when Jean crashed into a utility pole. Upon execution of a search warrant of the vehicle, the officers recovered two firearms, ammunition, and multiple spent casings. One of the recovered firearms had a large-capacity magazine attached to it, and the other firearm had been reported stolen. At approximately the same time the officers heard the gunshot, an

automated ShotSpotter sensor[1] notified law enforcement that 18 gunshots had just been fired at an apartment complex located two blocks south of where the car chase began.  Law enforcement officers found spent casings at the scene, and forensic analysis revealed that these casings came from the two firearms found in the car Jean was driving.  The government concluded that there was enough evidence to show that the weapons used in the shooting were the same ones recovered from the vehicle Jean was driving but not enough evidence to conclude that Jean and his passenger shot the victim.

On November 17, 2020, Jean was indicted for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), (2).  Jean pled guilty to the charge on August 25, 2021.  As part of the plea agreement, the government agreed to recommend that Jean be sentenced at the low end of the Guidelines range, provided that Jean not misrepresent any facts to the government.

On September 27, 2021, a U.S. probation officer prepared a presentence investigation report (PSI) that offered recommendations for Jean's sentence based on the U.S. Sentencing Guidelines. Pursuant to U.S.S.G. § 2K2.1(a)(4)(B)(i)(I), the probation officer calculated a base offense level of 20 because Jean's offense under 18

---

[1] A ShotSpotter sensor is a strategically placed acoustic sensor that uses audio pulse data, multilateration, and machine learning algorithms to calculate the presence and location of gunshots.

U.S.C. § 922(g)(1) involved a semiautomatic firearm capable of accepting a large capacity magazine. He then made a series of increases to Jean's sentence based on the nature of his offense. The probation officer increased the offense level by two because the offense involved a stolen firearm. *See* U.S.S.G. § 2K2.1(b). The probation officer also applied a four-level increase pursuant to U.S.S.G. § 2K2.1(b)(6)(B) because the firearm was used in connection with a felony offense and a two-level increase pursuant to U.S.S.G. § 3C1.2 because Jean "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." PSI ¶¶ 24, 27. Finally, he applied a three-level decrease pursuant to U.S.S.G. § 3E1.1(a)–(b) because Jean demonstrated acceptance of responsibility and timely notified the government of his intention to plead guilty, yielding a total offense level of 25.

The probation officer also applied a series of increases to Jean's sentence based on his criminal history. At age 19, Jean was convicted of five separate residential burglaries, three of which included grand theft and criminal mischief. For those crimes, Jean was sentenced to 14 years of probation, 364 days' imprisonment, and a bootcamp program. When Jean failed to complete the bootcamp program, his probation was revoked, and he was sentenced to 48 months' imprisonment. Between ages 23 and 30, he was also convicted of giving false information to law enforcement, grand theft of an auto, trespassing, possession of meth, and possession of cocaine. Outside of his convictions, Jean had been charged

with several violent offenses, including four instances of battery, an aggravated assault with a deadly weapon, and an armed robbery. The probation officer calculated a total of eight criminal history points, which placed Jean in a criminal history category of IV.

Based on the total offense level of 25 and a criminal history category of IV, the probation officer calculated a Guidelines range of 84 to 105 months' imprisonment.

Prior to his sentencing hearing, Jean filed a sentencing memorandum with the U.S. District Court for the Southern District of Florida. In his sentencing memorandum, Jean argued that the District Court is obligated to consider his family responsibilities. *See* U.S.S.G. § 5H1.6. Jean stated that he was a caregiver to his fiancée who remained disabled after a car accident. Jean also argued that his substantial work history (described below) merits a below-Guidelines sentence.

Jean's sentencing hearing took place in the U.S. District Court for the Southern District of Florida on November 3, 2021. At the hearing, the government recommended a 96-month imprisonment sentence—which was at the middle of the Guidelines range. The government argued that Jean should receive a sentence above the low end of the Guidelines range based on the serious and violent nature of the offense. The government also pointed to Jean's lengthy criminal history as proof that his prior incarceration did not deter him from committing crimes—and as proof that Jean thus deserves a lengthier sentence. Finally, the government argued that because many of Jean's prior crimes—such as home invasions,

burglaries, and grand thefts of vehicles— were invasive and violent, public safety concerns dictate that Jean receive a lengthier sentence than the minimum recommended.

In response to the government, defense counsel set out several personal factors that, in his view, warranted a below-Guidelines sentence for Jean. Defense counsel first argued that Jean had aged out of his criminal conduct and was more mature now than when his criminal history occurred. Defense counsel then asserted that Jean's obligations to his family warrant a sentence below the Guidelines range, explaining that Jean has been the caregiver for his fiancée, Tonya McCall, for the last seven years. He noted that McCall was disabled from a car accident that had put her in a coma, had three strokes since the accident, and needed Jean at home because life without him was very difficult. Defense counsel also argued that Jean's consistent work history over the last few years justified a below-Guidelines sentence, noting that since 2015 Jean was working as a landscaper, was a paid laborer, and had a job at a laundromat. Finally, defense counsel argued that Jean deserved a sentence below the Guidelines minimum because prison conditions during the pandemic were more restrictive than under normal circumstances.

The District Court ultimately adopted the government's recommendation and sentenced Jean to 96 months in prison. The court emphasized that the offense "[was] not mere possession of the gun," but also the discharge of 17 rounds that resulted in injury, Jean's acknowledgement that he possessed the gun and

ammunition, the spent cartridges linking Jean to a drive-by shooting found in the car he was driving, and the "tremendous chase through the streets of downtown Miami," where the driver hit several other cars and put pedestrians at risk. Tr. Sentencing Hr'g 21–22. The court explained that although Jean was very young when he committed many of his prior offenses, they were very serious crimes. The court also noted that even if it assumed that Jean had matured and would refrain from committing crimes in the future, that factor was not enough for the court to deviate downward from the Guidelines range. The court commented that it was seriously considering 105 months, the maximum of the range, but decided against it because of the difficulties of the pandemic, the time Jean had already been in custody, and the arguments made by defense counsel.

On appeal, Jean argues that the 96-month sentence is substantively unreasonable for several reasons. First, Jean argues that his work history and caregiving responsibilities supported a sentence below the Guidelines range. Second, Jean makes the broader point that a defendant's personal characteristics should be considered equally with the nature and circumstances of the offense. Finally, Jean argues that his contributions of time and energy toward his disabled fiancée are acts of charity that justify a lenient sentence and that a court may consider hardships created by the defendant's confinement. We affirm the District Court's sentence.

II.

When reviewing a sentence for substantive reasonableness, we consider the totality of the circumstances under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). The District Court abuses its discretion when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (internal quotation marks omitted). The factors that a District Court must consider when determining a sentence are set out in 18 U.S.C. § 3553(a). Among other things, a District Court must consider the nature of the offense; the need for the sentence to serve goals such as reflecting the nature of the crime, protecting the public, and deterring the defendant from committing future crimes; and the sentence range established for the offense. 18 U.S.C. § 3553(a)(1)–(2), (4). "[A] district court commits a clear error of judgment when it considers the proper factors but balances them unreasonably." *Irey*, 612 F.3d at 1189.

To determine whether a District Court has balanced the relevant factors unreasonably, we must make the sentencing calculus itself and review each step the District Court took in determining its sentence. *Id.* In doing so, we consider the "totality of the facts and circumstances" present in the case. *Id.* But we have "underscored" that we must give "due deference" to the District Court to consider and weigh the proper sentencing factors. *United States v.*

*Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018) (quotation marks omitted). The District Court does not have to weigh all the factors equally and is given discretion to attach great weight to one factor over another. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). Further, we ordinarily expect that a sentence within the advisory Guidelines range is a reasonable one. *United States v. Cabezas-Montano*, 949 F.3d 567, 611 (11th Cir. 2020). A sentence that is well below the statutory maximum for the offense also indicates the sentence is reasonable. *Rosales-Bruno*, 789 F.3d at 1256-57. This Court will only set aside a District Court's sentence if, after giving "a full measure of deference to the sentencing judge," we determine the sentence is outside the range of reasonable sentences dictated by the facts presented in the case. *Irey*, 612 F.3d at 1190–91.

Based on the facts in this case, we conclude that the District Court did not abuse its discretion in sentencing Jean to 96 months in prison. The District Court placed significant weight on the circumstances of the offense, which included the drive-by shooting and the car chase, because they fully reflected the nature of Jean's conduct beyond his actual conviction for unlawful possession of a firearm. The court also emphasized the defendant's criminal history involving other very serious crimes. Additionally, the court mentioned the need to protect the public from further crimes, the need to reflect seriousness of the offense, and the need to deter others. Pursuant to 18 U.S.C. § 3553(a), the District Court acted within its discretion by considering these factors. The court

acknowledged Jean's argument that he had matured and would not reoffend because his most serious convictions were far in the past, but it did not think this factor weighed heavily enough to cause a deviation below the Guidelines range.

Although the court did not specifically address Jean's work history or role as a caregiver in its sentencing explanation, the court said that its decision not to sentence Jean to the maximum of the Guidelines range was based in part on the arguments made by defense counsel, which highlighted these mitigating factors. The District Court did give some weight to those factors, but it determined that Jean's mitigating factors were not compelling enough to warrant a below-Guidelines sentence. Jean argues that the sentencing court should have weighed his personal characteristics equally with the nature and circumstances of his offense, but it was within the court's discretion to assign less weight to Jean's personal characteristics and more weight to the specific circumstances of the offense and Jean's criminal history. *Rosales-Bruno*, 789 F.3d at 1254.

The length of the sentence imposed by the District Court also weighs against a finding of abuse of discretion. The 96-month sentence imposed by the District Court was within the advisory Guidelines range of 84 to 105 months and was 24 months below the statutory maximum—both factors which weigh in favor of the sentence being reasonable. *Cabezas-Montano*, 949 F.3d at 611; *Rosales-Bruno*, 789 F.3d 1256–57. In contrast, the sentences that this Court has held to be substantively unreasonable are ones that fall far short of even the minimum recommended sentence for the

offense. *See, e.g.*, *United States v. Livesay*, 587 F.3d 1274, 1278–79 (11th Cir. 2009) (holding that probation is a substantively unreasonable sentence for a billion-dollar fraud offense); *United States v. Pugh*, 515 F.3d 1179, 1194 (11th Cir. 2008) (vacating a sentence of probation for receiving and distributing child pornography as substantively unreasonable).

Here, Jean has not shown that his sentence was substantively unreasonable. The District Court considered Jean's personal characteristics, but it ultimately decided to give more weight to the circumstances of his offense and his criminal history, which was within the court's discretion. Jean's sentence was within the Guidelines range and well below the statutory maximum, which also supports the sentence's reasonableness. The District Court did not abuse its discretion in sentencing Jean to 96 months' imprisonment, so the District Court's sentence is accordingly

**AFFIRMED.**