[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13678
_____

D.C. Docket No. 7:07-cr-00507-VEH-TMP-1


UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

JAMES WINSTON HAYES,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(August 12, 2014)

Before ED CARNES, Chief Judge, TJOFLAT, and JORDAN, Circuit Judges.

JORDAN, Circuit Judge:

"Corruption," Edward Gibbon wrote more than two centuries ago, is "the most infallible symptom of constitutional liberty." EDWARD GIBBON, THE

HISTORY OF THE DECLINE AND FALL OF THE ROMAN EMPIRE, Vol. II, Ch. XXI, at 805 (David Womersley ed., Penguin Classics 1995) [1781].  And so, although unfortunate, it is perhaps not surprising that, even today, people continue to pay bribes to government officials with the expectation that they will make decisions based on how much their palms have been greased, and not what they think is best for the constituents they serve.

In this criminal appeal involving corruption in Alabama's higher education system, we consider whether the district court abused its discretion by imposing a sentence of three years of probation (with a special condition of six to twelve months of home confinement) on a 67-year-old business owner who—over a period of four years—doled out over $600,000 in bribes to a state official in order to ensure that his company would continue to receive government contracts, and whose company reaped over $5 million in profits as a result of the corrupt payments.  For the reasons which follow, we hold that such a sentence was indeed unreasonable.

## I

We begin with the facts, and then discuss what transpired in the district court at sentencing.  Along the way, and in response to our colleague's dissent, we add a bit of background on the relationship between departures under U.S.S.G. § 5K1.1 and variances after *United States v. Booker*, 543 U.S. 220 (2005).

**A**

For years, James Winston Hayes ran ACCESS Group Software, LLC, a successful computer software company in Alabama. ACCESS sold educational software to the Alabama Department of Postsecondary Education ("ADPE"), and the two-year colleges it regulates. ACCESS did business with more than 25 two-year colleges and technical schools in Alabama.

Starting in 2002, when he was 59, Mr. Hayes decided to increase his company's chances of being profitable by rigging the competitive bid processes through which the ADPE awards contracts to vendors. Over the course of four years, Mr. Hayes paid over $600,000 in bribes to Roy Johnson—the then-Chancellor of the ADPE—his family, and his friends. The payments, to list a few, included $124,400 towards the construction costs of Mr. Johnson's home; $23,850 for a sound system in that home; and $55,000—as directed by Mr. Johnson—to Mr. Johnson's son-in-law, an attorney, for legal services that were never provided to Mr. Hayes or ACCESS. In order to conceal the nature of the payments, Mr. Hayes and others reimbursed third parties and created false invoices, contracts, and mortgages.

The bribes proved successful. From 2002 to 2006, ACCESS received more than $14 million in gross income from the ADPE, from which it realized a profit of approximately $5 million.

3

At some point, the federal government began investigating corruption at the ADPE. During the early stages of that investigation, the government contacted Mr. Hayes and subpoenaed his bank records. Perhaps realizing that the jig was up, Mr. Hayes obtained counsel and began cooperating with the government. Among other things, Mr. Hayes permitted his office and vehicle to be wired for audio and video and personally wore a recording device to tape meetings with several targets of the investigation. He also provided the government with documentation verifying his illicit financial dealings with a number of Alabama officials.

In 2007, the government charged Mr. Hayes by information with bribing Mr. Johnson, the former Chancellor of the ADPE—an agency receiving federal funds—in violation of 18 U.S.C. § 666(a)(2) (Count 1), and conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 2). The information also sought criminal forfeiture based on the charges in Counts 1 and 2. In February of 2008, Mr. Hayes pled guilty to Counts 1 and 2, and consented to forfeiture.

The probation office prepared a presentence investigation report to be used at Mr. Hayes' sentencing. The report indicated that, under the 2010 version of the Sentencing Guidelines Manual, Mr. Hayes scored out to a total offense level of 33 and had a criminal history category of I, resulting in an advisory guidelines range of 135 to 168 months' imprisonment. Neither party voiced objections to the

report's calculation of the advisory guidelines, and as a result the district court adopted that range at the initial sentencing hearing.[1]

## B

The Sentencing Guidelines contain a number of departure provisions. Among them is § 5K1.1, which allows a departure from the advisory guidelines range "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another[.]"

Because § 5K1.1 is silent as to the methodology to be used in determining the extent of a substantial assistance departure, the government has discretion in recommending a methodology, and the district court has discretion in deciding what methodology to use once it grants a motion for departure. *See United States v. Lindsey*, 556 F.3d 238, 245-46 (4th Cir. 2009); *United States v. Floyd*, 499 F.3d 308, 312 n.6 (3d Cir. 2007). As the Seventh Circuit has explained:

> Once the sentencing court decides to depart downward, it in turn may quantify the assistance the defendant provided by a simple numerical reduction in the offense level or by a percentage reduction of the total sentence; both methods (and perhaps others we do not consider here) are tools that appropriately recognize the rationale of the guidelines—that the reduction should reflect accurately the assistance that the defendant has rendered to the government.

*United States v. Senn*, 102 F.3d 327, 332 (7th Cir. 1996). *See also United States v.*

---

[1] The district court held a second sentencing hearing because it thought it might need testimony from witnesses concerning restitution. The parties ended up stipulating as to restitution, and the district court adopted their stipulation.

5

*Vazquez-Lebron*, 582 F.3d 443, 445 (3d Cir. 2009) ("A [d]istrict [c]ourt need not follow a particular formula in calculating a § 5K1.1 departure—it may be appropriate to depart by a certain number of months or guideline ranges below the initial sentencing range."); *United States v. Hargrett*, 156 F.3d 447, 450 n.1 (2d Cir. 1998) ("A downward departure based on [§] 5K1.1 does not require the district [court] to pick a new offense level and a particular sentence within the range set for that level; rather the court may simply pick a sentence of so many months without mention of an offense level.").

Not surprisingly, therefore, reported cases illustrate a variety of approaches to § 5K1.1 departures. Sometimes, as was the case here, the departure is based on offense levels deducted from the defendant's total offense level. *See, e.g.*, *United States v. Livesay*, 525 F.3d 1081, 1087 (11th Cir. 2008) (government recommendation of three-level downward departure from defendant's total offense level); *United States v. Martin*, 455 F.3d 1227, 1233 & n.4 (11th Cir. 2006) (government recommendation of nine-level downward departure from defendant's total offense level); *United States v. Knapp,* 955 F.2d 566, 568 (8th Cir. 1992) (district court's seven-level downward departure from defendant's total offense level). Sometimes the departure is based on a percentage deduction from the bottom, midpoint, or top of the defendant's advisory guidelines range. *See, e.g.*, *United States v. Burns*, 577 F.3d 887, 889 (8th Cir. 2009) (en banc) (government

6

recommendation of 15% downward departure); *United States v. Senn*, 102 F.3d 327, 332 (7th Cir. 1996) (government recommendation of 50% downward departure). And sometimes the departure is based on a reduction of a specific number of months from the defendant's advisory guidelines range. *See, e.g.*, *United States v. Koufos*, 666 F.3d 1243, 1254 (10th Cir. 2011) (government recommendation of 20-month reduction from bottom and top of applicable range).

Regardless of the methodology used, once the district court grants a motion for downward departure under § 5K1.1, it will be left with a new number (or range of numbers) insofar as the Sentencing Guidelines are concerned. *See United States v. Hippolyte*, 712 F.3d 535, 541 (11th Cir. 2013) ("A departure provision is a change to a sentencing guideline range based on, e.g., substantial assistance to authorities."); U.S.S.G. § 1B1.1, n.1(E) ("'Downward departure' means [a] departure that effects a sentence less than a sentence that could be imposed under the applicable guideline range or a sentence that is otherwise less than the guideline sentence."). The "calculation of the initial advisory [g]uidelines range, along with any applicable departures, results in a 'final advisory [g]uidelines sentencing range.'" *United States v. Losoya*, 623 F.3d 624, 626 (8th Cir. 2010).

A concrete example helps put these principles into focus. Assume that a defendant has an advisory guidelines range of 70-87 months' imprisonment. If the district court grants a government § 5K1.1 motion which recommends a 50%

7

departure from the bottom of that range, the new bottom number for guidelines purposes will be 35 months of imprisonment (50% of 70 = 35).  The district court will then have to determine whether, under the factors set forth in 18 U.S.C. § 3553(a), it should sentence the defendant to 35 months, something less, or something more.  That is the approach dictated by the Sentencing Guidelines and our cases.  *See* U.S.S.G. § 1B1.1(a)-(c) ("Application Instructions") (district court must first (a) determine the guidelines range, and then (b) consider departures, including those under Chapter 5K, before (c) taking into account the § 3553(a) factors); *United States v. McVay*, 447 F.3d 1348, 1356 (11th Cir. 2006) ("[A]fter it has decided the length of departure warranted by the substantial assistance motion, the district court is obliged to take into account the advisory [g]uidelines *and* the sentencing factors set forth in . . . § 3553(a) in fashioning a reasonable sentence."); *Martin*, 455 F.3d at 1236 (same).[2]

## C

In this case, the government filed a motion for downward departure pursuant to § 5K1.1 based on Mr. Hayes' substantial assistance, as well as a separate sentencing memorandum.  In its motion, which discussed only matters related to Mr. Hayes' cooperation and assistance, the government recommended that the

---

[2] If the district court sentences a defendant to a term different than the one produced by a § 5K1.1 downward departure, such a sentence is "considered a 'variance'" in guidelines parlance.  *See* U.S.S.G. § 1B1.1, background.  *See also United States v. Lee*, 725 F.3d 1159, 1165 n.5 (9th Cir. 2013) ("a 'variance' [is] the third step of the [g]uidelines procedure").

district court depart from an offense level of 33 to an offense level of 25, with a corresponding advisory guidelines range of 57-71 months' imprisonment.  Then, apparently traveling under the unstated assumption that the district court would grant its motion for departure, the government advocated that the district court sentence Mr. Hayes to 60 months in custody.  In its separate memorandum, the government again recommended a final sentence of 60 months' imprisonment, based in large part on its § 5K1.1 motion for a downward departure.  In so doing, the government at times conflated the factors to be considered under § 5K1.1 with the factors to be considered under § 3553(a).  Although the government's separate bases for the ultimate 60-month recommendation may not have been artfully stated, at the initial and second sentencing hearings the district court and the parties understood that the government was moving for a downward departure (to 57-71 months in custody) under § 5K1.1 based solely on Mr. Hayes' substantial assistance, and that the government's bottom-line recommendation of a 60-month prison sentence corresponded to the point within the recommended post-departure range where the government thought the district court should sentence Mr. Hayes after considering the totality of the circumstances and the § 3553(a) factors.[3]

The district court pointed out, and the government agreed, that consistent with *McVay*, 447 F.3d at 1356, it had to rule on the motion for downward

---

[3] This was the same methodology employed in *Martin*, 455 F.3d at 1233 n.4.

departure before hearing from the parties on what would constitute a reasonable sentence under § 3553(a).  At the first sentencing hearing, the district court granted the government's § 5K1.1 motion, but departed more than the government had recommended.  Considering only "[Mr. Hayes'] substantial assistance to the government[,]" the district court found that the "appropriate . . . guideline[s] level for consideration . . . [was] [l]evel 22, which when combined with the criminal history category of I[,] create[d] an advisory guideline[s] range of 41 to 51 months."

After granting the government's § 5K1.1 motion, the district court heard from the parties (mainly at the second sentencing hearing) with respect to the sentence it should impose.  Mr. Hayes requested a downward variance to a sentence of probation or a relatively short term of imprisonment based on a number of factors, including his culpability relative to Mr. Johnson, his otherwise law-abiding life, his role as his father's former caretaker, his age and deteriorating physical health, and his not posing a risk to society.  The government responded that a total sentence of 60 months' imprisonment was appropriate because Mr. Hayes' crimes were serious and involved the corruption of high-ranking public officials, obstructive behavior, and significant amounts of state funds.  The government emphasized that the sentence imposed on Mr. Hayes should be one that not just punished him for his conduct, but also deterred others from engaging

in similar conduct.

The district court stated that it had sufficient information on all of the § 3553(a) factors, except for the need to avoid unwarranted sentence disparity, and proceeded to read summaries of the dispositions in 14 related cases from a chart provided by the probation office.  The district court then noted that Mr. Hayes' "offense was serious" and that the "sentence should promote respect for the law and provide just punishment for the offense."   Additionally, the district court remarked "that just because a crime is a white collar crime, it does not mean that it does not need to be deterred," and "agree[d] with the government that prison sentences are probably the best deterrence . . . [for] other people who might consider similar conduct."   The district court found that Mr. Hayes "seem[ed] genuinely remorseful," was unlikely to commit further crimes, and was not a risk to the public.  In response to Mr. Hayes' contentions regarding his age and health, the district court noted that it was "aware of the ability of the government to provide almost any medical care that's needed[] [and that although] . . . age is something [it] can consider, . . . [it did not] consider it to be overwhelming or a large factor in this case."

Returning to the disparity issue, the district court said the following: "And I've spoken at length about the need to avoid unwarranted sentencing disparit[y] among similarly situated defendants.  And in having gone through all of that, I

don't want anybody to think that [it] was like the overwhelming factor. It's just I had a lot of information about that . . . that I hadn't focused on and that I wanted to go through." The district court did not explain what disparity, if any, would result if it sentenced Mr. Hayes to some term of imprisonment.

The district court, noting its authority to impose a non-guidelines sentence under *Booker*, 543 U.S. at 259-60, sentenced Mr. Hayes to concurrent terms of three years' probation, with six to twelve months of home confinement. It also ordered Mr. Hayes to pay $628,454.28 in restitution, to forfeit $5 million, and to pay a $1,000 fine and $200 in special assessments. The district court stated that the sentence was "sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing and is reasonable when considering the sentencing factors found at [§] 3553(a)." The government objected to the procedural and substantive reasonableness of the sentence, including the extent of the downward departure pursuant to § 5K1.1 and the reasonableness of the probationary terms the district court imposed.

On appeal, the government does not challenge the extent of the district court's § 5K1.1 departure. The only argument the government makes is that the concurrent three-year terms of probation are substantively unreasonable. As a result, that is the only argument we address.

## II

In imposing sentence, a district court may not presume that the range produced by application of the Sentencing Guidelines is reasonable, *see Rita v. United States*, 551 U.S. 338, 351 (2007), and must consider the factors set out in 18 U.S.C. § 3553(a).  These are "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most efficient manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range [as set forth in the Sentencing Guidelines] . . .; (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . .; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a).

## A

We review the substantive reasonableness of a sentence for abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 51 (2007).  In conducting that

review, we examine the "totality of the circumstances, including the extent of any variance from the [g]uidelines range," but we cannot presume that a sentence outside of that range is unreasonable. *Id.* We must give "due deference" to the district court's "decision that the § 3553(a) factors, on a whole, justify the extent of the [variance]. The fact that [we] might have reasonably concluded that a different sentence was appropriate is insufficient to justify reversal[.]" *Id. See also United States v. Langston*, 590 F.3d 1226, 1237 (11th Cir. 2009) ("The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors.") (citation and internal quotation marks omitted). Nevertheless, as we said several years ago,

> [a] district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors. As for the third way that discretion can be abused, a district court commits a clear error of judgment when it considers the proper factors but balances them unreasonably[,] . . . arriving at a sentence that does not achieve the purposes of sentencing as stated in § 3553(a).

*United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (citations and internal quotation marks omitted).

We acknowledge the institutional superiority that district courts possess with regards to sentencing, and are mindful that appellate review for reasonableness is not a license to substitute our views for those of the district court. We are

14

nevertheless convinced, under the deferential abuse of discretion standard, that the district court here committed a clear error of judgment in balancing the § 3553(a) factors, and that its downward variance to probation produced a sentence that was outside of the range of reasonable sentences permitted by the record. *See Gall*, 552 U.S. at 51; *Irey*, 612 F.3d at 1190.

In at least one other case involving both an initial § 5K1.1 departure and a subsequent variance, we analyzed the substantive reasonableness of the variance employing the post-departure range/number as the reference point. *See United States v. Crisp*, 454 F.3d 1285, 1289-90 (11th Cir. 2006) ("Even if the district court had not based the extent of the § 5K1.1 departure on improper considerations, its improper leap from the post-departure guideline range of 6-12 months to 5 hours would still have to be corrected."). We do the same here, and use the 41-51 month range produced by the § 5K1.1 departure as the reference point for the variance.

The district court recognized that Mr. Hayes' crimes (bribes of $600,000 paid out over four years, resulting in approximately $5 million in profits) were serious, that white-collar offenses need to be deterred, and that prison sentences are probably the best deterrent for those who might think about engaging in similar conduct. It never explained, however, how concurrent probationary terms with a period of home confinement would constitute just punishment for Mr. Hayes' multi-year bribery scheme, provide general deterrence for others, or promote

15

respect for the law.  *See generally United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009) (explaining that the "justification must be compelling enough to support the degree of the variance and complete enough to allow for meaningful appellate review").

As Mr. Hayes points out, the district court found that he was genuinely remorseful, was not likely to commit further crimes, and was not a risk to the public, but these factors—which are usually present in most white-collar cases resulting in a guilty plea—cannot be seen in a vacuum and must be balanced against the other applicable § 3553(a) factors.  In any event, the district court did not explain why they called for a variance down to probation.

We recognize that the district court took into account the possibility of unwarranted sentencing disparity, but that factor, on this record, did not justify sentencing Mr. Hayes to probation.  "[T]he need to avoid unwarranted sentencing disparity . . . requires the [district] court to consider other similarly situated defendants . . . who were convicted of similar crimes."  *United States v. McQueen*, 727 F.3d 1144, 1160 (11th Cir. 2013).  First, the district court never explained what unwarranted sentencing disparity would result if Mr. Hayes were sentenced to some term of imprisonment, and our review of the chart prepared by the probation office does not reveal any such unwarranted sentencing disparity among similarly situated individuals.  The one person who could be said to be most

16

closely situated to Mr. Hayes was Mr. Johnson, the former Chancellor of the ADPE and the recipient of Mr. Hayes' bribes. Mr. Johnson, who like Mr. Hayes received a downward departure based on a government § 5K1.1 motion, was sentenced to 78 months in prison after pleading guilty to conspiracy to commit bribery, bribery, conspiracy to commit money laundering, obstruction of justice, and tampering with a witness. Second, even if the loss resulting from crimes involving corruption can be seen as a rough proxy for similarity, four of the five related defendants who were responsible for losses over $250,000 received prison terms. And the one who was sentenced to probation was responsible for just over $300,000 in losses, less than half of the amount of money that Mr. Hayes was ordered to pay in restitution.

The district court also considered Mr. Hayes' age and health, but it did not think they were overwhelming factors. They, too, do not support Mr. Hayes' sentence of probation.

## B

In a number of opinions—some involving defendants who provided substantial assistance to the government—we have explained that general deterrence is an important factor in white-collar cases, where the motivation is greed. In those same opinions, we have set aside sentences of little or no imprisonment because they do not constitute just punishment for the offense, do

not promote respect for the law, and will not do much to deter similar criminal activity by others. *See, e.g.*, *United States v. Kuhlman*, 711 F.3d 1321, 1328-29 (11th Cir. 2013) (vacating, as substantively unreasonable, sentence of probation (for "time served" while on pretrial release) for defendant responsible for $3 million health care fraud scheme); *United States v. Livesay*, 587 F.3d 1274, 1287-89 (11th Cir. 2009) (vacating, as substantively unreasonable, sentence of probation for defendant involved in fraud scheme resulting in loss of over $80 million); *Martin*, 455 F.3d at 1239-41 (vacating, as substantively unreasonable, sentence of seven days in custody for defendant involved in fraud scheme resulting in loss of over $80 million); *Crisp*, 454 F.3d at 1290-92 (vacating, as substantively unreasonable, sentence of probation for defendant who participated in bank fraud scheme resulting in loss of about $484,000). We come to the same conclusion here.

Bribery cannot properly be seen as a victimless crime, for in a sense it threatens the foundation of democratic government. Putting aside the financial havoc it can cause, bribery tears at the general belief of the citizenry that government officials will carry out their duties honestly, if not always competently. And that harm, though it may at times appear intangible, is real.[4]

---

[4] "[A]mong a people generally corrupt liberty cannot long exist." EDMUND BURKE, *Letter to the Sheriffs of Bristol* (April 3, 1777), *in* HENRY ROGERS, THE WORKS OF THE RIGHT HON. EDMUND BURKE, VOL. 1, at 221 (London 1837).

## C

We do not mean to suggest that a downward variance can never be granted in white-collar cases, or that a sentence of probation is never permissible for defendants convicted of bribery or corruption offenses. Indeed, we have upheld, as reasonable, downward variances in several fraud cases where the government has appealed. *See United States v. Vawter*, 167 F. App'x 101, 103, 2006 WL 325745 (11th Cir. 2006); *United States v. Montgomery*, 165 F. App'x 840, 842-43, 2006 WL 284205 (11th Cir. 2006).

But there are bribes, and then there are bribes. Mr. Hayes did not just give a one-time gratuity to a local zoning inspector to expedite a building permit for a pool. He paid over half a million dollars in bribes, over a four-year period, to a high-ranking Alabama official so that his company could continue to receive lucrative government contracts—efforts which were rewarded by a corporate bottom line that got fatter by $5 million—and for that he received probation. As corruption cases go, this was bribery writ large, and on this record the district court's significant variance down to probation cannot stand.

## D

In closing, we respond to some of the issues raised by our colleague in dissent. As we explain, we disagree with his view of the case.

First, our colleague says that the government led the district court into

19

committing procedural error by recommending that Mr. Hayes' offense level be reduced by a certain number of levels for substantial assistance. We do not believe that assessment is correct. The numerous cases cited earlier in this opinion indicate that one of the permissible ways to compute a departure under § 5K1.1 is to reduce a defendant's offense level. *See Lindsey*, 556 F.3d at 245-46; *Livesay*, 525 F.3d at 1087; *Floyd*, 499 F.3d at 312 n.6; *Martin*, 455 F.3d at 1233 & n.4; *Senn*, 102 F.3d at 332. Although § 5K1.1 has been around for decades, we know of no cases which have suggested, much less held, that a substantial assistance departure cannot be accomplished in this manner. Tellingly, our colleague does not cite to any.[5]

Second, according to our colleague we are sanctioning a procedural error committed by the district court at the behest of the government. That, however, is not so, for there was no procedural error. As we have already explained, nothing in the text of § 5K1.1 prohibits a district court from effecting a substantial assistance departure through a reduction of the defendant's total offense level.

---

[5] In the context of departures under § 5K2.0, we have written that, if the district court chooses to depart, "it has 'wide discretion' in determining [the defendant's] base offense level." *United States v. Gibson*, 434 F.3d 1234, 1253 (11th Cir. 2006). What we said in *Gibson* is consistent with our decision in this case.

Additionally, to the extent our colleague's dissent might be read as suggesting that the district court could only have "departed" downward within Mr. Hayes' original sentencing range of 135-168 months, such a suggestion would run counter to § 5K1.1. The Third and Fifth Circuits have reversed § 5K1.1 "departures" within the original sentencing range, holding that they are not "departures" at all. *See Vazquez-Lebron*, 582 F.3d at 445-46; *United States v. Hashimoto*, 193 F.3d 840, 843-44 (5th Cir. 1999).

20

"Accordingly, the district court's reference to offense levels [here] in making its discretionary decision of how far to depart did not amount to the application of a 'sentencing range' authorized and made applicable by the Sentencing Guidelines[.]" *Lindsey*, 556 F.3d at 246.[6]

It may be that our colleague thinks that the § 5K1.1 motion did not justify the substantial departure the government was recommending, and/or that the district court departed too far when it granted that motion. Whatever the validity of those concerns, we do not comment on them because no one has raised them on appeal. The government could have tried to argue that the district court erred in departing beyond its § 5K1.1 recommendation, or committed another type of procedural error, but it chose not to make those arguments in its brief, and our general practice is to not address issues that are not properly raised by the parties.

We recognize that, normally, we ensure that there is no procedural error before addressing a claim of substantive unreasonableness, *see Gall*, 552 U.S. at 51, but we will not reach out to address a possible procedural error when neither the defendant nor the government have complained about it. Our cases, in fact, are replete with the rule that we do not have a duty to raise and decide issues—even

---

[6] Even if we assume that the district court committed procedural error, the government did not unambiguously invite the alleged error, a point our colleague seemingly acknowledges by conceding that the colloquy between the district court and the government "is somewhat convoluted." Under our precedent, the invited error doctrine is not triggered by ambiguous statements or representations. *See United States v. Dortch*, 696 F.3d 1104, 1112 (11th Cir. 2012) ("In the light of Dortch's ambiguous statement to the district court, the doctrine of invited error does not apply.").

21

constitutional ones—not mentioned by the parties. *See, e.g.*, *United States v. Curtis*, 380 F.3d 1308, 1310 (11th Cir. 2004); *United States v. Rodriguez*, 279 F.3d 947, 950 n.3 (11th Cir. 2002); *United States v. Nealy*, 232 F.3d 825, 830 (11th Cir. 1998).

The cases our colleague cites are consistent with our general approach. In those cases either the defendant or the government asserted procedural error in contesting the sentence, and the panels in those cases understandably ruled on the procedural challenges before addressing substantive reasonableness. *See United States v. Barner*, 572 F.3d 1239, 1247-52 (11th Cir. 2009) (defendant raised claim of procedural error); *United States v. Carter*, 564 F.3d 325, 326 (4th Cir. 2009) (government raised claim of procedural error); *United States v. Stephens*, 549 F3d 459, 466 (6th Cir. 2008) (defendant raised claim of procedural error); *United States v. Langford*, 516 F.3d 205, 207 (3d Cir. 2008) (defendant raised claim of procedural error). Here there are no procedural challenges by either side.

## III

The concurrent three-year probationary sentences in this case are substantively unreasonable given the factors set forth in § 3553(a). First, the sentences convey the message "that would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty," *Martin*, 455 F.3d at 1240, and accordingly do not constitute just

22

punishment for Mr. Hayes' offenses or promote respect for the law.  Second, the sentences do not provide for general deterrence because "[t]he threat of spending time on probation simply does not, and cannot, provide the same level of deterrence as can the threat of incarceration in a federal penitentiary for a meaningful period of time." *Livesay*, 587 F.3d at 1279.  Third, the sentences were not required to eliminate any sentencing disparity among similarly situated offenders because no such disparity existed.  The sentences imposed on Mr. Hayes are therefore vacated, and the case is remanded for resentencing.

**VACATED AND REMANDED FOR RESENTENCING.**

TJOFLAT, Circuit Judge, dissenting:

I fully agree with the court that the sentence of probation Hayes received in this case of massive public corruption is shockingly low and should not have been imposed. In appealing the sentence, the Government treats the District Court as the scapegoat, as if placing Hayes on probation was all the court's doing. The truth is that it was the Government's doing. To ensure that Hayes was given adequate credit for cooperating in its investigation, the Government deliberately led the District Court to abandon the Sentencing Guidelines, which called for a prison sentence of 135 to 168 months,[1] and then to ignore the Supreme Court's explicit instructions, in Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007), on the procedure to use in fashioning an appropriate sentence. This set the stage for the court's adoption of a fictitious Guideline range of 41 to 51 months and its creation of a downward variance to a sentence of probation.

In appealing Hayes's sentence to this court, the Government deliberately avoids any discussion of the District Court's procedural error.[2] To the contrary, it accepts the fictitious Guideline range the court adopted. All it complains of is the variance from that fictitious range to a sentence of probation, arguing that it is

---

[1] Although Hayes was to receive two sentences—one on Count One of the information, the other on Count Two—the parties and the court refer to the sentences as one sentence. For ease of discussion, I do the same.

[2] In doing so, the Government invites this court to disregard the Supreme Court's instruction in Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007).

24

substantively unreasonable.  Because it invited the procedural error, which, in turn,

led to the complained-of substantive error, the "invited error doctrine" precludes

the Government from prevailing in this appeal.  Yet the court fails to acknowledge

that a procedural error has occurred.  Instead, it assesses the substantive

reasonableness of Hayes's procedurally flawed sentence—something the Supreme

Court prohibits—and thereby avoids the need to grapple with the Government's

invited error.[3]  I dissent from the court's failure to invoke the doctrine and to send

the Government hence without day.

In part I of this opinion, I briefly recount the facts giving rise to Hayes's

conviction and sentencing.  In part II, I describe how the Guidelines are supposed

to operate and will show how the Government and the District Court misapplied

the Guidelines and set the stage for the sentence at issue.  Part III outlines the role

the courts of appeals play in reviewing a defendant's sentence, pinpoints the

procedural errors in this case, and explains why the invited error doctrine precludes

the Government from capitalizing on its induced error and obtaining relief.  Part IV

concludes.

---

[3]  In ignoring the procedural error, the court effectively adopts the approach the Government takes in its brief—that this court should entertain its substantive unreasonableness argument straightway without first determining whether the District Court committed procedural error.  See infra part III.

25

I.

From 2002 until 2006, James Hayes paid over $600,000 in bribes to Roy Johnson, the Chancellor of the Alabama Department of Postsecondary Education (the "ADPE"), which included: (1) a $124,000 payment to Johnson for expenses Johnson incurred in constructing his home, disguised as a payment to Johnson's driver, Lanier Anderson Higgins, for work Higgins never performed; (2) a $23,850 payment to Johnson to fund a sound system in Johnson's home, which Hayes disguised by using a third-party business to pay for the sound system and then reimbursing the business; (3) a $55,000 payment to Johnson's son-in-law Greg Morgan, an attorney, for legal services he never provided; and (4) a $24,418.93 payment to the Retirement Systems of Alabama on behalf of the Dean of Nursing at Southern Union State Community College.

In exchange, Johnson ensured that Access Group Software, LLC, of which Hayes was founder and owner, would win contracts to provide software services and associated services. Most of the time Access was the low bidder. On the few occasions when it was not, Johnson instructed the college president to award Access the contract anyway. Johnson's influence was such that the colleges bought from Access even when its products were inferior to those of other bidders. In total, Access' gross revenue increased to over $14 million and its profits to $5 million.

Hayes's involvement in the corruption at the ADPE began to unravel after a federal grand jury subpoenaed his bank records.  Hayes immediately took steps to disguise the true nature of his relationship with Johnson, but his attempts to conceal his criminal activity failed, and he was arrested for bribery, in violation of 18 U.S.C. § 666(a)(2).  After he realized the strength of the Government's case against him, Hayes agreed to cooperate and assisted federal agents in their investigation of others involved in Johnson's scheme.

On December 26, 2007, the Government filed in the United States District Court for the Northern District of Alabama an information charging Hayes in Count One with federal-funds bribery, in violation of 18 U.S.C. § 666(a)(2), and in Count Two with conspiring to launder money under 18 U.S.C. § 1956(a)(1)(B)(i), in violation of §1956(h).  The information also included a forfeiture count, Count Three.  It alleged that Hayes's interests in the proceeds of the crimes charged in Counts One and Two amounted to at least $5 million and that such interests were subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The Government filed the information pursuant to a plea agreement it had reached with Hayes.  Pursuant to that agreement, Hayes, on February 21, 2008, pled guilty to Counts One and Two and agreed to forfeit $5 million to the United States,

representing his interest in the proceeds of the crimes alleged in those Counts.[4]

The plea agreement contained a cooperation provision in which Hayes promised to provide truthful and complete information about Johnson's bribery scheme to the Government's investigators and at the Government's request to testify before the grand jury and at the trial of anyone indicted for participating in the scheme.  In return, the Government promised to recommend to the District Court at Hayes's sentencing that the court depart downward from the applicable Guidelines range pursuant to U.S. Sentencing Guidelines Manual § 5K1.1, if Hayes's cooperation rose to the level of substantial assistance for the reasons stated in § 5K1.1.[5]

## II.

The Supreme Court has clearly prescribed the procedure a district court must follow in sentencing a defendant.  It is a three-step process.  First, the district court "begin[s] . . . by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  Gall, 552 U.S. at 49, 128 S. Ct. at

---

[4] On October 27, 2008, the District Court entered a Final Order of Forfeiture.  The order recited that, pursuant to the plea agreement, Hayes agreed to forfeit to the United States $5 million "as proceeds of the illegal acts charged in Counts One and Two of the Information," that Hayes had "consented to the entry of a money judgment against him as part of his sentencing in [the case]," and that "based . . . [on] the terms of [the] Plea Agreement, the Attorney General is now entitled to possession of said property."  Doc. 16, at 1–2.  The order then provided that Hayes forfeited "the sum of $5,000,000.00 to the United States," that the Attorney General was "authorized to seize the property forfeited," and that the "Order of Forfeiture operates as a money judgment against . . . Hayes, thereby eliminating the requirement for ancillary proceedings."  Doc. 16, at 2–3.

[5] See infra part II.A.

596 (citation omitted).  Second, after arriving at the proper Guidelines range, the court must "giv[e] both parties an opportunity to argue for whatever sentence they deem appropriate."  Id.  Third, the court must "consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party."[6]  Id. at 49–50, 128 S. Ct. at 596.  In doing that, the court will bear in mind that "[t]he Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate," Rita v. United States, 551 U.S. 338, 349, 127 S. Ct. 2456, 2464, 168 L. Ed. 2d 203 (2007), to "assure the meeting of the purposes of sentencing as set forth in [18 U.S.C. §] 3553(a)(2)," 28 U.S.C. § 991(b).  "[W]hen the [court's] discretionary decision accords with the Commission's view of the

---

[6] 18 U.S.C. § 3553(a) lists seven factors district courts are to consider when sentencing. The first is "the nature and circumstances of the offense and the history and characteristics of the defendant."  § 3553(a)(1).  The second looks to the general purposes of sentencing,

> the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

§ 3553(a)(2).  The third is "the kinds of sentences available," the fourth is "the kinds of sentence and the sentencing range" under the Guidelines, the fifth is "any pertinent policy statement . . . issued by the Sentencing Commission," the sixth is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and, finally, the seventh is "the need to provide restitution to any victims of the offense."  § 3553(a)(3)–(7).

appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable." Rita, 551 U.S. at 351, 127 S. Ct. at 2465. "If [the court] decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 552 U.S. at 50, 128 S. Ct. at 597. The court must "adequately explain" the reasons for arriving at the chosen sentence, and "a major departure should be supported by a more significant justification than a minor one." Id. As the Supreme Court explained in Peugh v. United States, ___ U.S. ___, ___, 133 S. Ct. 2072, 2083, 186 L. Ed. 2d 84 (2013), "sentencing decisions are anchored by the Guidelines."

### A.

Federal sentencing is an adversarial process, Rita, 551 U.S. at 351, 127 S. Ct. at 2465, with the Government and the defendant engaged in "a confrontation . . . similar to that which occurs at a civil bench trial," United States v. Scroggins, 880 F.2d 1204, 1209 (11th Cir. 1989). The presentence report (the "PSI") serves as the starting point for arriving at an appropriate sentence in the same way that a pretrial stipulation serves as the starting point for arriving at a judgment in a civil case. The PSI identifies all applicable Guidelines and Sentencing Commission

30

policy statements, calculates the defendant's total offense level[7] and criminal history,[8] states the resulting Guidelines sentencing range[9] and types of sentences available, and identifies any factor relevant to the appropriate type or length of sentence and any basis for departing from the Guidelines range. Fed. R. Crim. P. 32(d)(1). It also includes additional information such as a defendant's history and characteristics, as well as assessments of any financial, social, psychological, and medical impact the defendant's crimes had on the victims. Fed. R. Crim. P. 32(d)(2). The parties have an opportunity to object to the PSI. If objections are made, the Probation Office takes them into account and revises the PSI to the extent it deems necessary. Fed. R. Crim. P. 32(f). At least seven days prior to the commencement of the sentencing proceeding, the Probation Office submits to the parties and the court the final PSI, accompanied by an addendum listing the factual issues, and thus the correct Guidelines calculation, to be resolved at sentencing. Fed. R. Crim. P. 32(g).

---

[7] The total offense level serves as a proxy for the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A), as well as the need to "afford adequate deterrence to criminal conduct," § 3553(a)(2)(B), and the adjustments, which are not necessarily related to the § 3553(a)(2)(A)–(B) purposes.

[8] The criminal history category serves as proxy for the need "to protect the public from further crimes of the defendant." § 3553(a)(2)(C). In other words, it is a proxy for recidivism. Thus, a defendant with a criminal history category of I does not need to be incarcerated to protect the public.

[9] Based on a defendant's offense level and criminal history category, the court calculates a Guidelines range from the sentencing table. See U.S.S.G. Ch. 5, Pt. A. Each cell in the table has a range of numbers, which corresponds to the upper and lower end of the recommended term of imprisonment for the defendant, based on the total offense level and criminal history category.

In this case, the Probation Office prepared and submitted to the parties and the District Court a PSI reciting the facts underpinning the offenses described in Counts One and Two and setting out the appropriate sentencing options under the Guidelines for those counts.  The PSI calculated a total offense level of 33 and a criminal history category of I and determined that the Guidelines prescribed prison terms for Counts One and Two of the information ranging from 135 to 168 months,[10] supervised release terms of two to three years, a fine of $17,500 to $175,000, restitution to ADPE of $2.4 million, and forfeiture as indicated in the plea agreement.  Neither party objected to any of the PSI's factual statements describing the criminal activity or to the proceeds of that activity as depicted in the information.  Nor did either party object to the PSI's sentencing options, including its calculation of the range of imprisonment, 135 to 168 months.  Nor did Hayes object to the PSI's requirement that he make restitution to the ADPE in the sum of $2.4 million.

---

[10]  The maximum term of imprisonment provided by statute was ten years for Count One, 18 U.S.C. § 666(a)(2), and twenty years for Count Two, 18 U.S.C. § 1956(a)(1)(B), (h).  "Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range [as it was for Count One], the statutorily authorized maximum sentence [is] the guideline sentence."  U.S. Sentencing Guidelines Manual § 5G1.1(a).  The guideline range for Count One thus became 120 months.  Because the maximum sentence for Count Two exceeded the 135 to 168 months range, the Count Two sentence could exceed the Count One sentence and create a total prison term of ranging from 135 to 168 months.

Also prior to the sentencing hearing, the Government filed a Motion for Downward Departure Pursuant to U.S.S.G. § 5K1.1,[11] which sought to have Hayes's sentence reduced based on his substantial assistance to the Government during its investigation of the bribery scheme. In its motion,[12] the Government urged the District Court, "[b]ased upon the defendant's substantial assistance," to "depart from total offense level 33 to level 25, which results in an advisory guideline range of 57–71 months,[13] and impose a sentence of imprisonment of 60 months." Doc. 22, at 1. The motion did not explain how Hayes's substantial assistance could appropriately serve as the basis for lowering the total offense level

---

[11] Section 5K1.1 of the U.S. Sentencing Guidelines provides:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
(3) the nature and extent of the defendant's assistance;
(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
(5) the timeliness of the defendant's assistance.

[12] The Government filed the motion on May 9, 2011. It filed its Sentencing Memorandum the same day and its Amended Sentencing Memorandum on May 10, 2011.

[13] The Guidelines sentencing table indicates that an offense level of 33 and a criminal history category of I (Hayes's criminal history category) creates a sentence range of 135 to 168 months; an offense level of 25 and a criminal history category of I creates a sentence range of 57 to 71 months. U.S.S.G. Ch. 5, Pt. A.

or Guidelines range of 135 to 168 months.  It provided no explanation because a legitimate explanation was not possible.

Substantial assistance is wholly irrelevant in determining a total offense level.[14]  And although the factors in § 5K1.1 are "not an exhaustive list," courts are "prohibited from considering sentencing factors unrelated to the nature and extent of a defendant's assistance in making § 5K1.1 departures."  United States v. Martin, 455 F.3d 1227, 1235–36 (11th Cir. 2006).  As such, a finding that the defendant provided substantial assistance cannot change the calculation of the total offense level or the "applicable Guidelines range" under Gall, because substantial assistance is unrelated to the determination of that range.  See 28 U.S.C. § 991(b); 28 U.S.C. § 994(c)–(d) (listing factors the U.S. Sentencing Commission must take into account when creating offense levels—including "the grade of the offense," "the deterrent effect a particular sentence may have on the commission of the offense by others," and "the current incidence of the offense in the community and in the Nation as a whole"—and the factors to be considered in creating criminal history categories—including age, vocation and skills, community ties—but not mentioning substantial assistance as a basis for either).

---

[14] The total offense level considers "the seriousness of the average offense sentenced under that particular guideline," "various factors considered relevant to the defendant's offense conduct," and "certain factors considered generally relevant for sentencing purposes." Scroggins, 880 F.2d at 1210.

In urging the court to create an arbitrary Guidelines range based on the § 5K1.1 factors, the Government invited the court to commit "procedural error." See Gall, 552 U.S. at 51, 128 S. Ct. at 597 (describing significant procedural errors, including "failing to calculate (or improperly calculating) the Guidelines range"). This type of procedural error would normally be a ground for vacting the sentence and remanding the case for resentencing. See, e.g., United States v. Gupta, 572 F.3d 878, 890–92 (11th Cir. 2009) (vacating and remanding a defendant's sentence after the district court improperly calculated the total offense level).

Along with its motion, the Government filed a memorandum recommending that Hayes be sentenced to 60 months' imprisonment. The memorandum stated:

> In accordance with the written plea agreement, the Government must recommend a sentence that departs below the low end of the Guidelines range determined by the Court at sentencing if Defendant provided substantial assistance. As explained below, the Government believes the Guidelines range is correctly calculated in the [PSI] as 135–168 months. Based on the Defendant's substantial assistance, and in light of the sentencing factors set for the in 18 U.S.C. § 3553(a), the Government believes a sentence of 60 months is reasonable.

Doc. 24, at 2. After reiterating that "the correct Guidelines range is 135–168 months," the Government stated that it "believe[d Hayes's] assistance warrants a downward departure from this Guidelines range to a sentence of 60 months." Doc. 24, at 3. The memorandum proceeded to describe the § 3553(a) sentencing factors

35

in general terms, and assured the court that a 60-month sentence was consistent with those factors. The Government did not reference the Guidelines range again, nor did it explain why a sentence that was more than 50 percent lower than the low end of that range comported with the § 3553(a) factors. The Government's memorandum made no reference to creating a substitute offense level or Guidelines range based on Hayes's substantial assistance.[15]

---

[15] A close reading of the Government's § 5K1.1 motion and its Sentencing Memorandum together presents contradictory propositions that are difficult, if not impossible, to reconcile and applies § 5K1.1 in an unlawful manner. I start with the Memorandum because its service was to support the motion.

The Memorandum does not explain how a sentence of 60 months would accomplish the purposes set out in § 3553(a)(1)(A) and (B), to provide just punishment and deter others from committing the public corruption crimes Hayes committed. Were the Government now to explain how sentences of 60 months would satisfy these (A) and (B) purposes, I suppose that it would point to our precedent which requires a court to take the Guidelines range (135 to 168 months) and the § 3553(a)(A) and (B) factors (that created that range) into account after it tentatively decides the credit it will give the defendant for his § 5K1.1 assistance. See, e.g., United States v. McVay, 447 F.3d 1348, 1356 (11th Cir. 2006) ("[A]fter it has decided the length of departure warranted by the substantial assistance motion, the district court is then obliged to take into account the advisory Guidelines range and the sentencing factors set forth in 18 U.S.C. § 3553(a) in fashioning a reasonable sentence."). Then, having taken the Guidelines range and the § 3553(a) factors into account, the Government would say that a § 5K1.1 departure of 75 months from the low end of the Guidelines range to a sentence of 60 months would not frustrate the sentencing goals reflected in the 135- to 168-month range. Those goals would still be met.

However, the position the Government took in its § 5K1.1 motion suggested that a 75-month departure from the Guidelines range of 135 to 168 months would frustrate those goals. The Government apparently thought that this frustration could be avoided if the District Court lowered the Guidelines range—and thus reconsidered the sentencing goals of the 135- to 168-month range—so that a sentence of 60 months would be an inside-Guidelines sentence. An inside-Guidelines sentence would not likely engender the public criticism a 75-month departure would produce. The Government's motion therefore recommended that, "based on the defendant's substantial assistance," the District Court depart from the Guidelines range of 135 to 168 months to a Guidelines range of 57 to 71 months, then impose a sentence of 60 months imprisonment—a sentence within the Guidelines range.

The Government's § 5K1.1 motion and its Sentencing Memorandum presented the District Court with two contradictory propositions. A 75-month departure from the Guideline range of 135 to 168 months to a sentence of 60 months <u>would not be</u> substantively unreasonable because it would not impermissibly frustrate the sentencing goals of § 3553(a)(2)(A) and (B). At the same time, a 75-month departure from that range <u>would be</u> substantively unreasonable (which is why the § 5K1.1 motion asked the court to establish a new Guidelines range of 57 to 71 months).

To avoid this dilemma, the Government recommended in its § 5K1.1 motion that, based on the defendant's substantial assistance, the District Court find a substitute offense level and Guidelines range—level 25 with a Guidelines range of 57 to 71 months—within which a sentence of 60 months could be imposed. But, as I have already explained, the court could not give effect to this Guidelines range recommendation because the law precluded it from doing so.

B.

1.

Hayes's sentencing proceeding commenced on June 8, 2011. The District Court began the proceeding, as <u>Gall</u> instructs, by determining the applicable Guidelines range. After hearing no objections, adopted the PSI's statements of fact and sentencing options. The court made specific findings that "the guidelines

37

offense level is 33.  The criminal history category is I.  And the advisory guideline imprisonment range is from 135 months to 168 months."  Doc. 28, at 4.  The 135- to 168-month range of imprisonment then became the "applicable Guidelines range," Gall, 552 U.S. at 49, 128 S. Ct. at 596, which "anchor[s] . . . the district court's discretion" in imposing a final sentence, Peugh, ___ U.S. at ___, 133 S. Ct. at 2087.

### 2.

After fixing the applicable Guidelines range at 135 to 168 months, the court proceeded to Gall's second step: "giving both parties an opportunity to argue for whatever sentence they deem appropriate."  552 U.S. at 49, 128 S. Ct. at 596.  The court began by taking up the Government's § 5K1.1 motion.  When the court asked the Government's attorney, George Martin, to speak about his § 5K1.1 motion, he responded, "Judge, I have set out the defendant's cooperation in the motion.  I won't belabor those points. . . . [W]e would ask the Court to grant [the § 5K1.1] motion and sentence the defendant below the guideline range to a term of imprisonment of 60 months."  Doc. 28, at 7 (emphasis added).  In so requesting, Martin appears to have recognized that 135 to 168 months remained the applicable Guidelines range.  At this point, he made no reference to the fact that his § 5K1.1 motion urged the court to create a new Guidelines range of 57 to 71 months.

After a brief discussion regarding restitution, the court returned to the

§ 5K1.1 motion:

THE COURT: The advisory guideline imprisonment range, as I previously stated, is between 135 months and 168 months.  And the government is asking me based on substantial assistance to impose a sentence of 60 months.  Correct; Mr. Martin?

MR. MARTIN:  Based both on his substantial assistance and the [18 U.S.C. §] 3553(a) [sentencing] factors.

THE COURT:  I'm not supposed to mix those, am I, Mr. Martin?

MR. MARTIN:  My recommendation of 60 months is based both on substantial assistance and a consideration of those factors, from my perspective.  That is, considering the crimes that he committed on one hand and the other factors and, on the other hand, the assistance he gave to the government, we recommend and we think a reasonable sentence is 60 months under the totality of the circumstances.

THE COURT:  Well, appropriately in your motion, . . . you don't list any [§] 3553(a) factors.  You only list [§] 5K1.1 factors.  And it is my belief that it is inappropriate for me to consider an amount by which to downwardly depart based on substantial assistance any factors other than substantial assistance, including the government's evaluation of the value of that substantial assistance. . . . I'm certain there's binding Eleventh Circuit case law to that effect.

MR. MARTIN:  Your honor—

THE COURT:  I understand that your [§ 5K1.1] motion is different from your sentencing memorandum.  You're just asking me in your sentencing memorandum not to vary below what you asked me to do on your 5K.

MR. MARTIN:  What I did is instead of filing one thing that asked the Court to sentence him to the low end of the guidelines and on the other hand filing a document at the same time asking that you sentence him way below the bottom end of the guidelines, I filed documents as a complete package setting forth our recommendation . . . and our reasoning for that recommendation, including both the

39

[§] 3553(a) factors and the defendant's substantial assistance.  In the sentencing memorandum, I make it clear that our 60-month recommendation is based on both of those things.

THE COURT:  You do in your memorandum.  I totally agree.  Do you agree with me that the binding case law in the Eleventh Circuit is that in ruling on a motion for downward departure pursuant to [§] 5K1.1, it is error for a district court to consider anything other than the substantial assistance?

MR. MARTIN:  Yes, Your Honor, I do.

Doc. 28, at 16–18 (emphasis added).

Although this colloquy between the court and Martin is somewhat convoluted, it is clear that in filing what he called "a complete package," Martin was providing the District Court with two alternative ways in which to give Hayes appropriate credit for his cooperation with the Government.  The court could sentence Hayes "to the low end of the guidelines" or it could sentence him "way below the bottom end of the guidelines."  The first alternative would require the court to lower the Guidelines range to 57 to 71 months and sentence Hayes to the low end of that range, 60 months.  The second alternative would require the court to adhere to the applicable Guidelines range, 135 to 168 months, and sentence Hayes "way below the bottom end of the guidelines" to 60 months.  The colloquy also demonstrates that the court and Martin both recognized that a defendant's substantial assistance is not relevant in deciding the need for a sentence to satisfy § 3553(a)(2)'s sentencing objectives, i.e., the defendant's substantial assistance cannot influence the offense level and the applicable Guidelines range.  Rather, the

40

nature and circumstances of the offense and the need for the sentence to attain

§ 3553(a)(2)'s objectives determine the offense level and Guidelines range. See 28

U.S.C. § 994(a). Thus, in asking Hayes's attorney, Derek Drennan, to comment on

the Government's § 5K1.1 motion, the court instructed him "to speak only to the

issue of substantial assistance because it would be error for [the court] to consider

any other factor" in ruling on the motion. Doc. 28, at 18.

Drennan asked the court to grant the Government's motion for the reasons

stated in his Sentencing Memorandum. The court granted the motion, then asked

Drennan, "[a]re you asking for a level of departure, or are you just asking that it be

granted? Because it asks me to depart to 60 months." Id. at 18–19. Drennan

replied, "Yes. That is correct." Id. at 19. Next, the court asked Drennan whether

he thought 60 months' imprisonment reflected the value of Hayes's assistance. He

responded, "[C]ertainly not. I don't know that I have—can take a position as to the

government's motion." Id.

The court, referring to the second of the two alternative ways Martin

proposed for granting a § 5K1.1 departure, informed Drennan that "for the

government to request a departure that's greater than 50 percent is unusual, to say

the least, in my experience. As a percentage, they've asked me to depart down a

41

lot more than I'm accustomed to seeing." Doc. 28, at 19–20.[16] As it turned out,

the court did not depart from the applicable Guidelines range, 135 to 168 months.

Instead, it adopted to Martin's first alternative and created a brand-new offense

level and arbitrary Guidelines range. In granting the Government's § 5K1.1

motion, the court explained:

> [I]t comes down to my opinion as to the appropriate amount of a
> departure. And I have the government's recommendation. And they
> do it by months or range when they – although they come up with an
> offense level. That's certainly not required. What they do is they
> come up with a number of months, which 60 months is actually five
> years, but it's all done in months. But that's helpful because it also
> may impact the fine. To have an offense level is helpful.
>
> All right. Backing up, <u>the Court finds that the government's motion
> for a downward departure pursuant to [§] 5K1.1 based on the
> defendant's substantial assistance to the government should be
> granted. The Court finds that the appropriate . . . guideline level for
> consideration should be Level 22, which when combined with the
> criminal history category of I creates an advisory guideline range of
> 41 to 51 months</u> and a fine range from $7,500 to $75,000.[17]   And the
> supervised release term remains from two to three years.
>
> In departing based on the government's 5K motion, I discussed with
> and evaluated the significance and usefulness of the defendant's
> assistance. And I discussed this both with the government and the
> defendant. And I considered both their writings and their statements
> here in court. And I specifically considered the government's
> evaluation of the assistance rendered.

---

[16]   Sixty months would be greater than a 50-percent departure from the applicable
Guidelines range, 135 to 168 months, but not a departure at all from the 57- to 71-month range.

[17] The District Court was incorrect to state that the new offense level would help with the
fine. The fine remained tied to the original Guidelines range of 135 to 168 months and could not
be reduced to the $7,500 to $75,000 range based on substantial assistance.

And I've talked about giving more weight versus less weight and how I agree with the government in giving more weight. It's just that I am giving even more weight than the government gave on all these factors. And I've already said that a request for a departure that's below 50 percent is unusual in my experience—my seven years['] experience.

I considered the truthfulness, the completeness and the reliability of the information and testimony provided by the defendant. I considered the nature and extent of the defendant's assistance and this includes the fact that he identified a totally new target, Mr. Phillip Grace. He testified at least twice. The number of people who were convicted or pled guilty at least in part because of his testimony or willingness to testify and the number of hours he participated in meetings. The number of times he met with the government. His willingness to testify against targets of a state prosecution.

Doc. 28, at 24–26 (emphasis added).

As is apparent, the District Court's creation of a new offense level and applicable Guideline range was based solely on Hayes's substantial assistance, but the court did not explain how that assistance warranted the new range, a new "starting point and . . . initial benchmark" for fashioning Hayes's sentence. See Gall, 522 U.S. at 49, 128 S. Ct. at 596. The Government did not object to the District Court's creating a new offense level and applicable Guidelines range because its § 5K1.1 motion had induced the court to do precisely that. With a new Guidelines range, 41 to 51 months, the court, at the Government's behest, abandoned the "applicable Guidelines range," id., which was supposed to "anchor . . . the district court's discretion" in selecting a final sentence, Peugh, ___ U.S. at ___, 133 S. Ct. at 2087.

43

3.

The third and final step of the sentencing process prescribed by Gall

required the District Court to "consider all of the § 3553(a) factors to determine

whether they support the sentence requested by a party."[18]  Gall, 552 U.S. at 49–

50, 128 S. Ct. at 596.  "[D]istrict courts must begin their analysis with the

Guidelines and remain cognizant of them throughout the sentencing process."  Id.

at 50 n.6, 128 S. Ct. at 597 n.6.  In considering these § 3553(a) factors, the court

may conclude that there are other characteristics of the crime, the defendant, or the

victims that are not accounted for by the Guidelines—that take the case out of the

"heartland" of cases the Sentencing Commission drew on in prescribing the

applicable Guidelines range.[19]  In that situation, the court can impose a sentence

outside of the Guidelines framework—in Guidelines parlance, a "variance."

U.S.S.G. § 1B1.1, background.

However, if the court wishes to sentence the defendant outside the

applicable advisory Guidelines range, whether via departure or variance, it "must

consider the extent of the deviation [from the Guidelines range] and ensure that the

justification is sufficiently compelling to support the degree of the variance. . . .

---

[18] In practice, this step requires the parties to justify their proposed sentences in light of
§ 3553(a).  When it comes time to impose a final sentence, however, the judge is required to
show how the sentence is consistent with the § 3553(a) factors.

[19] "The [Sentencing] Commission intends sentencing courts to treat each guideline as
carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline
describes."  U.S.S.G. Ch. 1 Pt. A, introductory cmt. 4(b).

[A] major departure should be supported by a more significant justification than a minor one." Gall, 552 U.S. at 50, 128 S. Ct. at 597.[20]  "Even if the sentencing judge sees a reason to vary from the Guidelines, if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, then the Guidelines are in a real sense the basis for the sentence." Peugh, ___ U.S. at ___, 133 S. Ct. at 2083 (emphasis added) (internal quotation marks omitted).

In this case, the District Court should have begun with the admittedly correct Guidelines range, 135 to 168 months, and then, with that range in mind, considered whether the § 3553(a)(2)(A) and (B) sentencing objectives could accommodate the parties' requested sentences.  Instead, the court adopted the Government's first alternative suggestion; it used an arbitrary Guidelines range and considered the parties' sentencing recommendations against that range.  When the sentencing hearing resumed on July 13, 2011,[21] the court adhered to that approach, but, as the hearing unfolded, it did not adopt the Government's recommendation to impose a sentence within the 57- to 71-month range.

The court began by reminding the parties that

---

[20] In Gall, the Supreme Court did not distinguish between variances and departures, which leads me to believe it was using the terms as synonyms.  See Thomas W. Hutchison, et al., Federal Sentencing Law and Practice § 11.5 (2014 ed.) (reaching the same conclusion).

[21] The June 8 hearing was continued until an issue regarding restitution could be resolved. At the July hearing, Martin announced that he and Drennan agreed that Hayes would pay restitution in the sum of $628,454.28.

45

> in granting the motion for a downward departure pursuant to [§] 5K1.1 based on the defendant's substantial assistance to the government, I found that <u>the appropriate guideline level for consideration should be Level 22, which when combined with a criminal history category I creates an advisory guideline range of 41 months to 51 months</u> and a fine range from $7,500 to $75,000 and a supervised release term of two to three years.

Doc. 29, at 10 (emphasis added).  This statement confirmed that the court's factual basis for creating the new Guidelines range was limited to Hayes's substantial assistance.  The Government did not object to the court's adoption of the 41- to 51-month range, even though it had no legal foundation, because the Government had urged the court to adopt a new Guidelines range in the first place.

Having established 41 to 51 months as the "starting point and the initial benchmark" for determining the defendant's sentence, see Gall, 522 U.S. at 49, 128 S. Ct. at 596, the court invited Drennan to discuss whether it should vary downward from that range.  Drennan began by discussing the § 3553(a)(2)(A) factor, urging the court to consider that the colleges that bought Access's software were still using it, and thus had sustained no loss, and the relative culpability of Hayes and Johnson, who instigated the criminal conduct.  He then turned to the § 3553(a)(2)(C)–(D) factors, highlighting that Hayes had been the main caretaker of his elderly father and mentally disabled brother, both since deceased, after the prior caretaker, Hayes's sister, was killed in a tornado that struck their residence; that Hayes was in poor health and nearly seventy; and that Hayes was not a risk to

46

society and thus did not need rehabilitation.  Hayes followed Drennan, apologized

for participating in the bribery scheme, promised to satisfy his restitution and

forfeiture obligations, and vowed to rehabilitate himself.  These factors, which

were unrelated to Hayes's substantial assistance, were appropriate for the court to

consider when determining whether to grant a variance.

Martin spoke next and argued that "[t]he Court's sentence should be one that

punishes the defendant for this conduct.  And it should be a sentence that deters

others from engaging in such conduct."  Doc. 29, at 17–18.  He concluded his

argument by stating,

> [A]s I stated at the first part of this sentencing hearing held last month,
> the government, based on all the factors, believed that a sentence of
> 60 months was a reasonable sentence.  That is over 50 percent below
> the low end of the guideline range.  And nothing has changed that
> since then to warrant a different recommendation.  It was reasonable
> then.  It's reasonable now.

Id. at 21.

Turning to Martin's argument that the defendant's sentence should reflect

the need for punishment and deterrence, the court said,

> I don't have any issues with your arguments that the defendant needs
> to be punished.  And I don't have any issues with the government's
> arguments that people need to be deterred from committing white
> collar crimes and that sending them to jail is a strong deterrent to
> others and punishment to the person being sentenced.
>
> What I don't have and I didn't ask for it, but maybe probation has, is
> because I do think one of the very, very significant things to consider
> in sentencing—all the [§] 3553(a) factors are important.  And I feel

like I have good information on all of the factors except the one about unwarranted sentence disparities among defendants.

Id. at 23.

The court then asked the probation officer, who was attending the hearing, about the sentences imposed on others member of the bribery scheme who had been convicted and sentenced.  After she directed the court to the relevant portion of the PSI, which listed the sentences these other participants received, the court read into the record the sentence imposed in twelve of the cases, noting that five were probation and three were greater than 60 months' imprisonment.  The probation officer then directed the judge to a chart, which was not included in the PSI and which provided more information about those sentences.  The chart listed two additional participants in the scheme, both of whom were sentenced to probation, as well as information for all fourteen participants regarding the crimes with which they were charged, the amount of loss attributed to each, the advisory Guidelines range in each case, and whether they pled guilty or were convicted.

After stating that the sentences the other participants received were relevant to § 3553(a)(6)'s command to avoid unwarranted sentence disparity, the court turned to the § 3553(a)(1) and (2)(A) and (B) factors: "the nature and circumstances of the offense," "this defendant's history and characteristics," the need for "a sentence [that] promote[s] respect for the law and provide[s] just punishment for the offense," "the need to afford adequate deterrence to criminal

48

conduct by others," and the need for "punishment that would deter other people who might consider similar conduct from committing that conduct." Doc. 29, at 29–30. Regarding the § 3553(a)(2)(C) factor, the need for a sentence to deter the defendant from committing further crime, the court found that "this defendant does not pose any risk of further crimes to the public." Doc. 29, at 30. After commenting on these § 3553(a) factors, the court returned to "the need to avoid unwarranted sentence disparities among similarly situated defendant" but said, "I don't want anybody to think that that was . . . the overwhelming factor." Doc. 29, at 31–32.

Having considered the § 3553(a) factors, the court granted Hayes a downward variance from the 41- to 51-month Guidelines range and sentenced him to probation for a term of 36 months, with not less than 6 nor more than 12 months home supervision.[22] The court found that "the sentence imposed is sufficient, but not greater than necessary to comply with the statutory purposes of sentencing and is reasonable when considering the sentencing factors found at 18 U.S.C. Section 3553(a)." Doc. 29, at 33.

## C.

To summarize, the parties began the sentencing process by stipulating to the PSI's finding that the appropriate offense level in this case was 33 and that the

---

[22] The court ordered Hayes to pay $628,454.28 with interest in restitution to the ADPE, payable immediately, and criminal forfeiture as to Count Three.

criminal history category was I.  They agreed that the correct and therefore applicable Guidelines range was 135 to 168 months.  The District Court accepted the PSI factual findings and Guidelines applications.  In doing so, the court adhered to the Supreme Court's instructions in Gall—that the first step in sentencing is to determine the applicable Guidelines range.

Then, the Government presented the court with two alternative approaches to use in determining Hayes's sentence, both based on his substantial assistance.  First, it could lower the offense level from 33 to 25, adopt a new Guidelines range of 57 to 71 months, and impose a sentence within that range, 60 months.  Or it could depart from the applicable Guidelines range, 135 to 168 months, and impose a sentence of 60 months.  The court adopted the Government's first approach but lowered the offense level to 22 and the applicable Guidelines range to 41 to 51 months.  In doing this, the court committed procedural error.  See Gall, 552 U.S. at 51, 128 S. Ct. at 597.  The court then compounded the error by treating the 41 to 51 months range as if it were based on the facts of the case and, after considering § 3553(a)(2)(C) and (D)'s sentencing factors, concluding that a downward variance to a sentence of probation was warranted.

### III.

After the District Court pronounced sentence, the Government objected "to the procedural reasonableness of the sentence and to the substantive

reasonableness of the sentence, including the extent of [the] Court's downward departure pursuant to 5K and the reasonableness of the Court's final sentence." Doc. 29, at 35. On appeal, however, the Government reframes its objection. It abandons the procedural-reasonableness objection and "does not challenge the district court's § 5K1.1 downward departure to a Guidelines range of 41-51 months." Appellant's Br. at 11 n.3. It does so even though that Guidelines range is purely arbitrary and therefore erroneous. The Government then limits it challenge to the substantive reasonableness of the sentence on the ground that the downward variance from the 41- to 51-month range to a sentence of probation fails to reflect the seriousness of Hayes's crime, does not adequately deter the general public from engaging in such crime, and is not justified by the need to avoid unwarranted sentencing disparities.[23]

---

[23] The Government's appeal is authorized by 18 U.S.C. § 3742(b). That section provides as follows:

> (b) Appeal by the Government.--The Government may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence--
> (1) was imposed in violation of law;
> (2) was imposed as a result of an incorrect application of the sentencing guidelines;
> (3) is less than the sentence specified in the applicable guideline range to the extent that the sentence includes a lesser fine or term of imprisonment, probation, or supervised release than the minimum established in the guideline range, or includes a less limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the minimum established in the guideline range; or
> (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

As it did in the District Court, the Government invites us to disregard the Supreme Court's instructions on the sequential steps a district court is to take in imposing a sentence under the Guidelines and the sequential steps a court of appeals is to take in reviewing the sentence.  By framing its appeal as a challenge solely to the substantive reasonableness of Hayes's sentence, the Government asks that we disregard Gall's instruction that a court of appeals may not assess the substantive reasonableness of a sentence unless it first concludes that the sentence is procedurally reasonable.  See 552 U.S. at 51, 128 S. Ct. at 597.  The Government ignores the fact that even though it does not challenge the procedure by which Hayes was sentenced, the Supreme Court requires that we must satisfy ourselves that no procedural error occurred.

---

> The Government may not further prosecute such appeal without the personal approval of the Attorney General, the Solicitor General, or a deputy solicitor general designated by the Solicitor General.

§ 3742(b) (emphasis added).  The Government's brief does not indicate which of the four grounds for appeal it is relying on here.  The objection the Government voiced following the District Court's imposition of sentence implied that it would appeal Hayes's sentence on ground (2), because, as I explain, procedural error is manifestly present.  Ground (4) is clearly inapplicable, and from a reading of its brief, I conclude that it is not relying on ground (1).  That leaves ground (3).

Ground (3) implies that the district court properly applied the Guidelines, and thus arrived at the appropriate applicable Guidelines range.  The Government's position is that the District Court properly applied the Guidelines and correctly arrived at the applicable Guidelines range.  So, to maintain this appeal, the Government must establish that Hayes's sentence of probation is a "lesser term of imprisonment . . . than the minimum established by the guideline range."  Hayes has not raised the question of whether a sentence of probation is a term of imprisonment; neither has this panel.  Consequently, I do not address it.

52

It is obvious to me that procedural error did occur. The District Court used an arbitrary Guidelines range as its Gall "starting point and . . . initial benchmark" in arriving at Hayes's sentence. See id. at 49, 128 S. Ct. at 596. Therefore, we may not review the substantive reasonableness of his sentence. Instead, we must vacate the sentence and remand the case for resentencing under the applicable Guidelines range, 135 to 168 months. The invited error doctrine precludes us from doing this, however, because the Government induced the error the District Court committed.

### A.

As the Supreme Court has instructed, a court of appeals' review of a criminal sentence is a two-step process. First it must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Gall, 552 U.S. at 51, 128 S. Ct. at 597.[24] Only then, after the court of appeals is certain that that no significant procedural error has occurred, can it turn to the substantive reasonableness of the sentence. Id. That is, the substantive reasonableness inquiry

---

[24] We assume that the Gall Court, in using the term "significant procedural error," meant error that materially affected the defendant's sentence. The procedural error I refer to in this opinion is significant and thus material.

53

"[a]ssum[es] that the district court's sentencing decision is procedurally sound."

Id.  If the sentencing decision is not procedurally sound, it cannot be reviewed for

substantive unreasonableness. [25]

We have recognized as much.  For instance, in United States v. Barner, 572

F.3d 1239 (11th Cir. 2009), we declined to discuss the substantive reasonableness

of a sentence "because such an exercise cannot be undertaken until [the procedural]

errors we have identified are addressed by the district court."  Id. at 1253 (citing

Gall, 552 U.S. at 51, 128 S. Ct. at 597).  Cf. Gupta, 572 F.3d at 888 ("Because we

conclude that a remand is necessary to correct procedural errors, we decline to

evaluate the substantive reasonableness of Gupta's sentence.  We do not know

what sentence the district court will impose on remand.  Thus, we would be

rendering an advisory opinion if we were to pick a sentence and declare it to be

---

[25] The majority justifies its decision not to assess the procedural reasonableness of Hayes's sentence—and to limit its review to the substantive reasonableness of the sentence—based in part on settled Eleventh Circuit precedent that "we do not have a duty to raise and decide issues—even constitutional ones—not mentioned by the parties."  Maj. Op. at 22.  If this were an ordinary appeal, I would agree that the court should invoke that doctrine.  But this is not an ordinary appeal.

Just as a sentencing court is not bound by the parties' framing of the Guidelines range in a plea bargain or at sentencing because the court "has an independent obligation to calculate correctly the sentencing range prescribed by the Guidelines," United States v. Aguilar-Ibarra, 740 F.3d 587, 591 (11th Cir. 2014) (internal quotation marks omitted), a court of appeals cannot—consistent with Gall—engage in substantive review without first ensuring the sentence is procedurally reasonable.

54

reasonable." (citation omitted) (internal quotation marks omitted)).[26]  Other circuits follow a similar approach.  See, e.g., United States v. Carter, 564 F.3d 325, 330 n.4 (4th Cir. 2009) ("Having found the sentence procedurally unreasonable . . . we cannot review the sentence for substantive reasonableness."); United States v. Stephens, 549 F.3d 459, 465 (6th Cir. 2008) ("If, and only if, the district court's sentencing decision is procedurally sound, we will then consider the substantive reasonableness of the sentence imposed . . . .") (internal quotation mark omitted)); United States v. Langford, 516 F.3d 205, 218 (3d Cir. 2008) ("[T]he failure to start with the correct Guideline range is legal error that thwarts reasonableness review— that is, it cuts off our review process before we even reach the issue of reasonableness.").[27]

It is only after the court of appeals is satisfied the district court correctly calculated the Guidelines range and did not otherwise commit procedural error that it can "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard."  Gall, 552 U.S. at 51, 128 S. Ct. at 597.  The court of appeals needs an accurate Guidelines range because "[w]hen conducting this review, the court will, of course, take into account the totality of the circumstances,

---

[26]  Declaring that a sentence is substantively unreasonable after finding significant procedural error is to render an advisory opinion because the district court, on remand will be resentencing the defendant under a new Guidelines range, a new benchmark.

[27]  That the cases cited above included challenges to both the procedural and substantive reasonableness of the sentence does not undermine the broader logic in each case that substantive-reasonableness analysis is impossible without procedural reasonableness.

including the extent of any variance from the Guidelines range." Id. (emphasis added). If the district court imposes a sentence below the applicable Guidelines range, the reviewing court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. When evaluating the district court's weighing of the § 3553(a) factors, the reviewing court is "obliged to remand for resentencing if [it is] left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (internal quotation marks omitted); see also United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc).

## B.

The District Court in this case committed clear procedural error by lowering the Guidelines range to 41 to 51 months based on Hayes's cooperation with the Government. Congress precluded the Sentencing Commission—in prescribing, in conformance with 28 U.S.C. § 994, the offense level for Hayes's offenses—and the District Court—in determining, in conformance with § 3553(a)(2)(A) and (B), the need for Hayes's sentence to satisfy the sentencing objectives of punishment and general deterrence—from considering substantial assistance provided to the

56

Government.  Because the District Court lowered Hayes's offense level based on substantial assistance alone, it created a Guidelines range, 41 to 51 months, that lacked a legal foundation and was therefore arbitrary.  The Government did not object because it encouraged the court to do this; after all, the Guidelines range it wanted the court to adopt, 57 to 71 months, was just as lacking in a legal foundation as the one the court ultimately chose.  In asking this court to assess the substantive reasonableness of Hayes's sentence, the Government is asking this court to review a sentence imposed without reference to the Guidelines.  Reference to the applicable Guidelines range is unnecessary, the Government implies, because anyone with a conscience would know that a sentence of probation for the widespread bribery that occurred in this case in would be preposterous.

We cannot accept the Government's request and at the same time obey the Supreme Court's mandate in Gall.  Gall precludes us from reviewing the substantive reasonableness of a sentence imposed without reference to the applicable Guidelines range.  A sentence imposed without reference to that range is procedurally unreasonable.  And a finding of procedural reasonableness is a necessary antecedent to substantive reasonableness.  See Gall 552 U.S. at 51, 128 S. Ct. at 597; Barner, 572 F.3d at 1253.

This, of course, makes sense.  If a district court imposes sentence without reference to a properly calculated Guidelines range, we lack an accurate

57

benchmark from which to evaluate its substantive reasonableness. "[S]entencing decisions are anchored by the Guidelines and . . . they remain a meaningful benchmark through the process of appellate review." Peugh, ___ U.S. at ___, 133 S. Ct. at 2083; see also Gall, 552 U.S. at 50 n.6, 128 S. Ct. 597 n.6 ("The fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."). As Gall directs, the substantive-reasonableness analysis must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." Gall, 552 U.S. at 51, 128 S. Ct. at 597 (emphasis added). As such, we should consider the substantive reasonableness of a sentence only "after [we have] determined that the district court's sentencing decision is procedurally sound." Pugh, 515 F.3d at 1190 (internal quotation marks omitted) (emphasis added). It is for this reason that this court and other courts of appeals will not evaluate the substantive reasonableness of a sentence in the face of significant procedural error. See, e.g., Barner, 572 F.3d at 1253; United States v. Carter, 564 F.3d 325, 330 n.4 (4th Cir. 2009); United States v. Stephens, 549 F.3d 459, 465 (6th Cir. 2008); United States v. Langford, 516 F.3d 205, 218 (3d Cir. 2008).

In the face of "significant procedural error," Gall, 552 U.S. at 51, 128 S. Ct. at 597, such as occurred here in the District Court's use of an arbitrary Guidelines

58

range, our normal response would be to vacate the sentence and remand the case for further proceedings.  However, the invited error doctrine precludes us from doing that.

C.

In moving the District Court to decrease Hayes's offense level from 33 to 25 and to adopt a Guidelines range of 57 to 71 months based solely on an irrelevant criterion, substantial assistance, the Government brought the District Court's procedural error on itself.  To be sure, the range the court eventually chose wasn't the one the Government proposed, but it was just as inappropriate as the Government's.  Both ranges reflected an intuitive reaction to Hayes's cooperation; the District Court simply thought his cooperation was deserving of a bit more grace than the Government recommended.  In the end, the Government accepts the court's range without qualification.  Appellant's Br. at 11 n.3 ("The government calculates the size of the variance as 41 months because it does not challenge the district court's § 5K1.1 downward departure to a Guidelines range of 41 to 51 months.").  And today, this court does as well.

In inviting the District Court to accept 41 to 51 months as the applicable Guidelines range, the Government also invited the District Court to depart or vary downward from that range for reasons unrelated to § 5K1.1 substantial assistance. The court could do this based on evidence indicating that a sentence in the 41 to 51

59

months range was not needed to satisfy § 3553(a)(2)(A) and (B)'s purposes of punishment and general deterrence.[28]  At the end of the day, the court accepted the Government's invitation and imposed a sentence of probation.

Although Hayes's sentence is the product of procedural error that is plain on its face, we are not at liberty to correct the error.  As we have explained countless times before, "[i]t is a cardinal rule of appellate review that a party may not challenge as error a ruling . . . invited by that party.  The doctrine of invited error is implicated when a party induces or invites the district court into making an error." United States v. Love, 449 F.3d 1154, 1157 (11th Cir. 2006) (citations omitted) (internal quotation marks omitted); see also United States v. Silvestri, 409 F.3d 1311, 1327 (11th Cir. 2005); Ford ex rel. Estate of Ford v. Garcia, 289 F.3d 1283, 1294 (11th Cir. 2002).  The doctrine of invited error "stems from the common sense view that where a party invites the trial court to commit error, he cannot later cry foul on appeal."  United States v. Brannan, 562 F.3d 1300, 1306 (11th Cir. 2009).

---

[28] The problem the court would face, though, is that the 41 to 51 months range does not represent the facts and circumstances surrounding Hayes's commission of the bribery in this case.  Offense level 22, which drives the 41 to 51 months range, assumes that Hayes's profits and the victims' losses were between $10,000 and $30,000.  See U.S.S.G. § 2B1.1(b)(1)(C).  It is a false assumption, however, because the facts are that Hayes's profits were $5 million and the victims lost $2.4 million.  According to the Sentencing Commission, these facts, which the parties and the District Court accepted as true, revealed that a sentence in the range of 135 to 168 months, based on an offense level of 33, was necessary in order to satisfy § 3553(a)(2)(A) and (B)'s sentencing objectives.

In the mine-run appeal, we would vacate the sentence and remand the case to the district court for resentencing.  Here, we would instruct the court to follow Gall's instruction and, in determining the extent of the § 5K1.1 departure from the applicable Guidelines range, 135 to 168 months, "consider all of the § 3553(a) factors to determine whether they support the sentence requested."  522 U.S. at 49–50, 128 S. Ct. at 596.[29]  In this case, however, we cannot remedy the procedural error because it was invited by the party seeking to challenge the sentence, the Government.

I say that the invited error doctrine applies even in a case where the defendant's sentence is as absurd as the one here.  The majority vacates the sentence in this case because the facts and circumstances surrounding the commission of Hayes's crime demand a sentence far more serious than the one he received.  Over a period of four years, Hayes's bribes netted him over $5 million in profits and caused the victims to suffer losses of $2.4 million.  To the citizens of Alabama aware of the magnitude of Hayes's crime, a sentence of probation is outlandish, a mere slap on the wrist.

Applying the invited error doctrine and allowing Hayes's sentence of probation to stand would breed disrespect for the rule of law in many quarters.  Disrespect for the rule of law and the damage to the body politic that portends

---

[29]  The same instruction would govern the court's consideration of a party's request for a variance from the applicable Guidelines range.

61

weigh heavily on one side of the scales of justice. However, the policies the invited error doctrine reflects weigh just as heavily on the other side of the scales. And they are several. I have already mentioned one: the doctrine vindicates respect for the courts by preventing "sandbagging" and "gamesmanship," where a party gets a second bite of the apple at his adversary's expense, and at the public's expense as well. The public suffers because, without the doctrine, the courts' dockets would become overcrowded, the cases of those standing in the queue waiting to be heard would be delayed, and the public's respect for the courts would wane. Justice delayed is justice denied.

In seeking the vacation of Hayes's sentence, the Government is gaming the system. But in a larger sense, it is obstructing the administration of justice in the Eleventh Circuit. Therefore, invoking the invited error doctrine, I would affirm Hayes's sentence.

### IV.

The court entertained this appeal as the Government's brief requested. That is, it sidestepped the issue of whether the Hayes's sentence is procedurally unreasonable and went straight to the issue of whether the sentence is substantively unreasonable. In doing so, the court purports to accept the statement in the Government's brief, that it "does not challenge the district court's § 5K1.1 downward departure to a Guidelines range of 41-51 months." Appellant Br. 11

n.3.  I say that the court purports to do this because it is apparent to me that it finds

Hayes's sentence of probation substantively unreasonable not because it constitutes

an unreasonable variance from a Guideline range of 41 to 51 months, but because

it is an unreasonable departure from the applicable Guidelines range of 135 to 168

months.  The court reveals this in the following passage of its opinion, which

describes the criminal activity the 135- to 158-month range reflects.

> But there are bribes, and then there are bribes.  Mr. Hayes did not just give a one-time gratuity to a local zoning inspector to expedite a building permit for a pool.  He paid over half a million dollars in bribes, over a four-year period, to a high-ranking Alabama official so that his company could continue to receive lucrative government contracts—efforts which were rewarded by a corporate bottom line that got fatter by $5 million—and for that he received probation.  As corruption cases go, this was bribery writ large, and on this record the district court's significant variance of 41-51 months cannot stand.

Ante at 18.

In short, the court should have focused on Gall's third step, which required

the District Court to "consider all of the § 3553(a) factors" in light of the correct

Guidelines range, 135 to 168 months, "to determine whether they support[ed] the

sentence requested by" Hayes—specifically, the sentence it ultimately imposed,

probation.  See Gall, 552 U.S. at 49–50, 128 S. Ct. at 596.  After this, the court

should have asked whether the District Court "adequately explain[ed]" how a

sentence of probation squared with the need for Hayes's sentence to provide just

63

punishment and to deter others from emulating his criminal conduct.  Id. at 50, 128 S. Ct. at 597.

Putting this aside, I am concerned about the court's mandate.  What instruction does it give the District Court?  Section 3742 of Title 18 of the U.S. Code states, in pertinent part, that

> If the court of appeals determines that—
>
> . . .
>
> (2) the sentence is outside the applicable guideline range and . . . the departure is . . . plainly unreasonable, it shall state specific reasons for its conclusions and—
>
> . . .
>
> (B) if it determines that the sentence is too low . . ., it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate, subject to subsection (g).

18 U.S.C. § 3742(f)(2).  Subsection (g) states that "[a] district court to which a case is remanded pursuant to subsection . . . (f)(2) shall resentence a defendant in accordance with section 3553 and with such instructions as may have been given by the court of appeals."  § 3742(g).

I suggest that the court's mandate tells the District Court that a sentence of probation on the facts stated in the PSI is substantively unreasonable as a matter of law.  The court's reliance on those facts, as opposed to hypothetical facts that

64

would support a Guidelines range of 41 to 51 months,[30] indicates that the

applicable Guidelines range is 135 to 168 months.

I return to what I state in the introduction to this opinion: the invited error

doctrine requires that the judgment of the District Court be affirmed.

---

[30] By conceding that the District Court's use of the 41- to 51-month range was correct, the Government implicitly takes the position that the facts of Hayes's case support the 41 to 51 months range.